**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| FRANK JOSEPH SCHWINDLER, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION FILE |
| | ) | NO.: 4:16-cv-00189-WTM-CLR |
| v. | ) | |
| | ) | |
| P.O. AHMED HOLT, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT OF COURT-APPOINTED *AMICUS CURIAE***

Per the Court's November 17, 2021 appointment of *amicus curiae* and its

January 10, 2022 scheduling Order, the undersigned *amicus curiae* provides the

following report to assist the Court. To summarize the answers to the Court's three

inquiries:

(1)    First, the Court inquired as to "the scope of petitioner's right to access

the record of prior proceedings and legal research materials in the context of this

*habeas corpus* proceeding." *See* Dkt. 87 at 7. *Amicus* reports that:

- As a prisoner acting *pro se* in a *habeas corpus* proceeding,

Schwindler's right to access the courts includes a right to reasonable access

to the record and legal materials; however, the scope of that right as applied

#3341198v1

to specific facts and circumstances is ill-defined by the law, and normally litigated only in the context of Section 1983 civil actions.

- Schwindler arguably has more specific, colorable rights to access because when he dismissed his prior civil action asserting an access-to-the-courts claim arising from his lack of access to files and materials, the state agreed to (and at the time, did) provide him such access.

- The Georgia Department of Corrections maintains generally-applicable policies regarding library and legal material access to protect prisoners' rights to access the courts.

(2)     Second, the Court inquired "whether the facilities and access provided by the Respondent and the Georgia Department of Corrections afford the required access." *See* Dkt. 87 at 7.  *Amicus* responds that to the extent Schwindler accurately characterizes certain facts, his rights are being violated and the prison is not complying with its own policies, although not due to any bad faith by the prison warden or counsel.

(3)     Third, as requested by the Court, *amicus* provides some suggestions to the Court with respect to "feasible alternatives that would provide Petitioner with the access to the record and legal research to which he is entitled." *See* Dkt. 87 at 7.  Given the professed willingness of Respondent to work in good faith to resolve

2

#3341198v1

these issues, *amicus* is optimistic certain steps could ameliorate both Schwindler's and the Court's concerns.  In particular, *amicus* recommends the prison provide Schwindler with a single storage device containing all pertinent materials, and that Schwindler be allowed to keep this device in his possession.

The remaining sections of this Report discuss these responses in detail.

**I.      Schwindler Has a Right to Access Records and Legal Materials Under the Constitution, the Resolution of His Prior Civil Action, and Department of Corrections Policies.**

**A.      Prisoners Acting *Pro Se* In *Habeas Corpus* Proceedings Have a Right to Meaningfully Access the Record and Legal Research Materials.**

Prisoners have a First Amendment right of access to the courts that includes a right to meaningful and reasonable access to record and legal research materials. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  As the Eleventh Circuit has explained, "[a]ccess to the courts is a fundamental constitutional right that 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'  However, there is no right to a law library or to legal assistance *per se*, but only a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Juiffre v. Broward*

3

*Sheriff's Office*, 717 F. App'x 886, 888 (11th Cir. 2017) (citing *Lewis*, 518 U.S. at

351) (additional internal citation omitted).

Most legal precedent regarding prisoners' rights to access the courts arises

from civil litigation, specifically civil rights actions under 42 U.S.C. § 1983.  To

succeed in this kind of civil access-to-the-courts claim, an inmate "must show

actual injury in the pursuit of specific types of nonfrivolous cases: direct or

collateral attacks on sentences and challenges to conditions of confinement."

*Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998); *see also Juiffre*, 717

F. App'x at 888 (same).

Because this is a *habeas* proceeding in which Schwindler is attacking his

conviction and sentence and is acting *pro se,* the right to access described in these

cases applies to Schwindler here.  Nevertheless, prisoners do not have "an abstract,

free-standing right to a law library or legal assistance."  *Lewis*, 518 U.S. at 351.

Instead, "meaningful access to the courts is the touchstone."  *Id.*  Moreover, the

Supreme Court has held that an access-to-the-courts claim fails unless the prisoner

proves "actual injury," *i.e.* that "a nonfrivolous legal claim has been frustrated or

. . . impeded."  *Id.* at 353.  Thus, for an access-to-courts claim to succeed, "the

prison officials' actions which allegedly infringed an inmate's right of access to the

courts must have frustrated or impeded the inmate's efforts to pursue a

4

nonfrivolous legal claim." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) (discussing *Lewis*). "Examples of actual injury include missing filing deadlines or being prevented from presenting claims." *Denney v. Nelson,* 304 F. App'x 860, 863 (11th Cir. 2009). "[B]oth policy and the prevailing state of the law require an inmate [raising a Section 1983 access-to-the-courts claim] to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action." *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991).

Unsurprisingly, it is often difficult for Section 1983 plaintiffs to prove that particular restrictions on (say) their access to files, records, or legal research materials tangibly impede their challenge to their conviction or sentence. In addition, there is no clear guidance on exactly what kind of access a prison must provide to ensure the prisoner's meaningful right of access is protected. "[J]ail officials do not necessarily have to provide a prisoner with free, unlimited access to photocopies of legal [materials] in order to protect the prisoner's right to access to the courts." *Wanninger v. Davenport*, 697 F.2d 992, 994 (11th Cir. 1983). And even the alleged "confiscation of [a] flash drive" containing the prisoner's transcripts and other materials has been found in one Georgia case to have been

5

#3341198v1

insufficient to cause an "actual injury" redressible in the Section 1983 context. *Ford v. Zanders*, 2020 WL 6498974, at *1 (M.D. Ga. June 26, 2020).

**B.      Schwindler's Right of Access is Arguably Stronger Here Due to the Resolution of His Section 1983 Claim in 2017.**

While Section 1983 access-to-the-court cases provide no clear guidance on the scope of a prisoner's right to records and legal files, Schwindler is differently situated here because of his own prior Section 1983 claim, which he filed in 2011 in the Northern District of Georgia. *See Schwindler v. Dozier*, Civ. Action No. 11-cv-01276-TCB (N.D.Ga.). Among other claims, Schwindler alleged that the prison system had denied his right to access the courts by destroying, misplacing, or otherwise denying him access to his legal files.

The manner in which Schwindler's civil action was resolved is, unfortunately, a bit ambiguous. After discovery, the district court granted summary judgment against Schwindler on August 5, 2013. *See* Ex. 1 (Summary J. Order). On June 5, 2015, the Eleventh Circuit reversed, holding in relevant part that Schwindler had "created a material issue of fact as to whether there is an ongoing violation of his right to access the courts." *See* Ex. 2 (June 6, 2015 11th Cir. Order). The case was then remanded for trial, at which point Merritt McAlister, then a partner at King & Spalding and now a law professor at the University of Florida, appeared on behalf of Schwindler.

6

On May 18, 2017, with Schwindler represented by Ms. McAlister, the parties jointly and voluntarily dismissed his civil action. *See* Ex. 3 (Notice of Voluntary Dismissal). However, and as alluded to during this Court's October 28, 2021 hearing, Schwindler dismissed his civil action before trial in large part because the state agreed to, and did, provide electronic or paper copies of some of the legal files his lawsuit complained he had been unable to access, and assured that he would have access to them. *See, e.g.,* Ex. 4 (Oct. 28, 2021 Hearing Tr.) at 20 (Schwindler noting that the "second" and "third" CD-ROM were produced "as part of the federal civil rights case"). The specific files and electronic media are addressed in greater detail below.

Unfortunately, the parties to that civil action did not execute (or submit to the court) a written settlement agreement at the time of dismissal. Nonetheless, to get better information about what the state agreed to provide Schwindler when he dismissed his civil action, the undersigned communicated with both Ms. McAlister and Ellen Cusimano, opposing counsel at that time. The undersigned also reviewed settlement e-mails between Ms. McAlister and Ms. Cusimano, reviewed the October 28, 2021 hearing transcript, and communicated indirectly with Mr. Schwindler through a relative.

#3341198v1

All parties recall that after the Eleventh Circuit ruled in Schwindler's favor, the state agreed to provide, and did provide, Schwindler with an electronic compilation of materials Schwindler requested from the lengthy prior post-conviction proceedings. These are what was referred to as "CD 2 and CD 3" in the Court's hearing, discussed more below. Moreover, in the course of conferring with Ms. McAlister as trial approached (and leading up to the agreement to voluntarily dismiss), Ms. Cusimano wrote on behalf of the state that

> by this email I am confirming for you that Mr. Schwindler is receiving access to his legal materials and the law library, as provided in the SOPs. I am also confirming by this email that I received the signed VA and SS records and have mailed them to both entities. I will send you a copy of the documents that we receive from them.

May 17, 2017 Cusimano email to McAlister (email chain attached as Ex. 5).

Thus, while the undersigned offers no opinion on the legal enforceability of any alleged agreement between the parties to Schwindler's civil action, it is clear that Schwindler dismissed his access-to-the-courts claim only after receiving certain materials he allegedly had previously been unable to access, and with assurances from the state that it would facilitate his continued access to those legal materials and comply with the Department of Corrections' relevant operating procedures.

#3341198v1

**C.    The Department of Corrections' "Access to the Courts" Policies Also Apply to Schwindler.**

Ms. Cusimano's conferral email above mentions the state's intent to comply with "SOPs," a reference to the Department of Corrections' Standard Operating Procedures.  SOP Number 227.03, the Department's "Access to Courts" policy, is the most relevant here.  The currently-available version of that policy (effective June 30, 2020) is attached hereto as Exhibit 6.  The policies provide, in relevant part, that:

- "Paper, envelopes, pens and carbon paper for the presentation of legal documents and mail shall be available in the offender commissaries."  *Id.* at IV.B.

- Prisoners shall have access to an "electronic law library."  The prison librarian must "determine the amount of time that each offender receives based on the number of computers and the number of offenders requesting access," but each offender "shall receive at least 30 minutes of access."  *Id.* at IV.C.2.  The policy does not clearly state how frequently each prisoner must be granted this access.  The prison must also keep the electronic law library updated from a software standpoint.  *Id.* at IV.C.7.

9

#3341198v1

- Prisons shall maintain "Offender Reference Libraries" with written legal materials and copies of relevant forms. *Id.* at IV.D. The reference library "shall be open and available for offender use a minimum of 20 hours per week," with each prisoner allowed two hours of reference library time per week. *Id.* at IV.D.5 and IV.D.5.c. "Library hours will be shortened or cancelled only in the event of an emergency." *Id.* at IV.D.5.b. The reference library "shall maintain . . . [a]ll resources provided by LexisNexis and contained on the most current version of the LexisNexis Electronic Distributed Media (portable hard drive) as approved by GDC's Office of Legal Services." *See* "Offender Reference Library Collection," Attachment 1 to SOP 227.03, attached hereto as Ex. 7.

- The policy is a bit unclear with respect to a prisoner's right of access to his personal case materials and notes, as opposed to general legal reference and research materials. However, the policy does state that "[o]ffenders may possess legal materials in their living area . . . to the extent said materials do not, in combination with other personal property, create a fire, sanitation, security, or housekeeping problem." Dept. of Corrections' Standard Operating Procedures. SOP Number 227.03 at IV.G.1.

10

II.    **Respondent Is Not Currently Providing Schwindler the Required Access**.

With the important caveat that the undersigned has relied on unsworn representations and undertaken no direct investigation such as visiting the prison, Schwindler is not currently receiving the full access to materials and legal resources to which he is entitled.  Put in the language of controlling precedent, Schwindler has "articulate[d] facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action." *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir.1991).  Schwindler is substantively disadvantaged by his practical inability to access, review, or work with records specific to his case.  And he is functionally "unable to do timely research" due to constraints of his current confinement.  As discussed *infra* in Section III, however, the undersigned is optimistic that certain feasible changes would correct these deficiencies.

A.    **Schwindler's Access to Materials From His Case is Unduly Limited Because He Can No Longer Access His Case Files.**

Schwindler has been incarcerated for many years and in numerous prisons, and the record of his trial, direct appeals, and collateral appeals is lengthy.  Prisons have at various times lost or made it difficult for him to access his files, particularly the electronic data media containing the record and related materials he

11

#3341198v1

needs to prosecute his case.  The most significant imposition on his right to access the court is his current, functional inability to use these materials.

At the Court's October 28, 2021 hearing, Schwindler emphasized his belief that Respondent's counsel and the warden at his current prison have been acting in good faith to attempt to provide him access.  Tr. at 6; *id.* at 24 ("they've been extremely cooperative" at Phillips prison, where Schwindler has been housed since 2013).  He also averred that at the time he dismissed his Section 1983 action, he was provided with and could access the materials he wants to access now; the problem is that he no longer can do so.  A particularly helpful exchange during the Court's hearing summarized "the complete universe" of materials at issue:

> THE COURT: Okay. So what we've discussed so far that I understand to be the entirety of – or the – it may not be. You can correct me if I'm wrong. But what I understand to be the complete universe of the potential record here would be covered by what is on CD-ROM 1, which is also duplicated by the paper material that's currently at Phillips, what's on –
>
> MR. SCHWINDLER: That's correct.
>
> THE COURT:   – CD – what's on CD-ROM 2, which is the 1983 related action from the Northern District of Georgia. What's on CD-ROM 3?
>
> MR. SCHWINDLER: 2 and 3 are both materials that were produced in response to the civil case in the Northern District. The USB is what was the civil case. So the USB is the case. 2 and 3 are what was responded to that.

THE COURT: Does that represent, Mr. Schwindler, the entire universe of the material to which you would need access and give you your complete record to pursue your habeas claim here?

MR. SCHWINDLER: Yes, sir.

THE COURT: There are no other materials that you're aware of, then, outside CD-ROM 1, CD-ROM 2, CD-ROM 3, and the USB storage device; is that correct?

MR. SCHWINDLER: That's correct. That's what I used to be working with.

Tr. at 27-28.

Thus, the records Schwindler wishes to access are or were on three compact discs (CD-1, CD-2, and CD-3) and a USB/thumb drive. Schwindler also stated that he has a "lockbox" at the prison with paper copies of the contents of CD-1, but the box contains an unorganized pile of 15,000 or more pages, with bindings or other tabs removed, making it impossible to use. Tr. at 17-19. Schwindler believes the prison has lost or inadvertently destroyed paper copies of the contents of CD-2 and CD-3. *Id.*

More important than the paper copies is Schwindler's inability to use the electronic data media. Schwindler and Respondent conveyed different understandings as to the location of the three CDs and thumb drive. According to Schwindler, Ms. Warren [the warden's assistant] has CD-1, but not CD-2 or CD-3,

13

and Schwindler has not seen the USB thumb drive since 2017.  Tr. at 21, 26-27.

Respondent's counsel, on the other hand, stated that she had personally visited the

prison recently, and seen that Ms. Warren had CD-1, the USB drive, and another

CD, which she believed was CD-2.  Tr. at 28.

Regardless of which drives are physically located at the prison, however,

Schwindler has no effective ability to access them, for three reasons.[1]  First, as

noted above, Schwindler does not know the location of CD-2, CD-3, or the thumb

drive, and asserts that he has not accessed them for years.  Second, because the

CDs and/or thumb drive are controlled by Ms. Warren or other prison officials,

Schwindler must submit a written request to access them.  A prison official must

then walk to Ms. Warren (or whoever possesses them), sign the discs out, and

return with them, a process Schwindler estimates "requires a minimum of 45

minutes in each direction," and which only succeeds if the discs can be located.

Third (and in combination with the prior challenges), Schwindler cannot keep the

discs and can only use them with access to a computer that can read them.

The undersigned is not in a position to assess what specific computer

hardware (chromebooks, various other computers, etc.) the prison possesses, which

---

[1] The facts outlined here are drawn both from the Court's hearing transcript and
from written (indirect) communications to *amicus* from Mr. Schwindler.

14

of that hardware is capable of reading the CDs or thumbdrives, and when Schwindler might realistically access those computers.  But Schwindler maintains that the prison either does not possess, or at least he never has access to, a computer that could read the CDs or thumb drive and allow him to work with them meaningfully.  *See, e.g.,* Tr. at 10.

> **B.**    **Schwindler's Access to Legal Research Is Unduly Limited By Computer and Library Issues At the Prison.**

As stated above, the undersigned is not in a position to assess the computer resources at the prison, or Schwindler's practical ability to access them. Schwindler claims that the available computers cannot access legal research sites such as Lexis or Westlaw.  *See* Tr. at 8-10 (Schwindler); *see also* Tr. 33 (Respondent's counsel acknowledging that prison's tablet computers cannot store documents or allow internet research; "[t]hey're essentially big Game Boys"). Schwindler also believes that the prison lacks computers available to prisoners that can read a CD.  Tr. 10.  Moreover, due to Covid-related staffing and other restrictions, including the lack of a law librarian, Schwindler asserts that he is unable to conduct meaningful legal research or check out legal materials.  Tr. at 7-9.

Respondent, on the other hand, believes Schwindler has the same access to legal research resources as any other inmate, *i.e.* two hours per week.  Tr. at 37.

15

But Schwindler then asserted that while the warden promised him two hours' access to computers every Friday, he had not received such access as of the hearing. Tr. at 39-40.

The undersigned is unable to offer guidance on the factual question as to how much legal research time and access Schwindler has received or is receiving. However, Respondent agrees that per relevant policies, Schwindler should receive access to meaningful legal research capabilities at least two hours per week.  In a *habeas* action presenting similar allegations, the court took steps to ensure the Petitioner could conduct meaningful legal research before proceeding substantively.  *See Fournier v. Warden, Northern New Hampshire Correctional Facility*, 2009 WL 1940378, at *1 (D.N.H. July 1, 2009).  The *pro se habeas* petitioner in *Fournier* complained he was unable to conduct legal research due to the prison's lack of resources, and the court granted him a briefing extension until petitioner received "access to a legal research site, such as LEXIS or WESTLAW." *Id.*  The court reasoned that "[Petitioner] cannot be limited to looking up the cases, on the internet, cited by the Warden."  *Id.*

#3341198v1

**III.    Respondent Should Provide Schwindler With a Single Thumb Drive Containing All Materials, Allow Him To Keep It In His Possession, And Ensure His Access to a Computer That Can Read The Drive and Allows Legal Research.**

Schwindler's most critical need is to gain meaningful access to the electronic materials from the three CDs and thumb drive.  As a factual matter, it remains unclear where these four devices were located at the time of the Court's October 28, 2021 hearing.  But even if they could be reliably located at a single point in time, Schwindler's access to the files they contain will inevitably be cumbersome and unreliable if they are stored on four different devices outside Schwindler's possession.  Different prison officials need to locate the different media at different times upon Schwindler's request, and he needs different computers to use them.

*Amicus* recommends the following:

(1)    **Create a single thumb drive/storage device with all of Schwindler's records.**  Respondent should copy all the material from the 3 CDs and thumb drive onto a single, new storage device, choosing a type of storage device readable by computers Schwindler will be able to access.  This should be feasible because Respondent represented continued access or possession to all four devices.  *See* Tr. at 28 (noting that CD 1 and the USB drive are at the prison); Tr. 33 ("I will be happy to provide copies again of those two discs . . . CDs 2 and 3").

17

Having the material on a single device that connects to a single kind of computer port is valuable for obvious reasons, especially given that CD drives are becoming rare. A copy could also be held by the Court so that it cannot be lost inadvertently. Ideally, Schwindler would be able to save his own notes or other work to the device as well, and avoid losing paper copies as has happened on a number of occasions.

(2)    **Allow Schwindler to maintain possession of the storage device**.

The prison should allow Schwindler to keep possession of the storage device at all times, so he no longer needs to submit a written request every time he seeks to use the materials. According to Schwindler, numerous inmates possess thumb drives or other electronic storage devices with their legal materials, and there is no general prison policy prohibiting this. Schwindler believes the reason he has never been allowed to keep possession of the CDs or USB is because one of the CDs allegedly contains pornography as part of the record, and inmates may not possess pornography. But it should be possible for Respondent to simply redact or delete objectionable pages from the storage device before Schwindler takes possession of it.[2]

---

[2] Schwindler believes that his logbook indicates where these objectionable materials are located on which CD.

18

(3)     **Ensure that Schwindler's computer/library time is with the right equipment.** The prison should ensure that when Schwindler has library/computer time, he is given access to a computer that has the capacity both to conduct legal research and to read his storage device. *Amicus* is unable to advise the Court more specifically as to this recommendation, however, because it likely depends on what storage device is used; what hardware the prison has or will acquire; where that hardware is located; and when and for how long prisoners may use it. It does not appear that the prison simply lacks the necessary physical resources; the problem seems to be that Schwindler's computer/library time does not provide him with the ability to conduct legal research or view his files, either because he doesn't gain access to the actual storage devices; because whatever computer he gets to use can't read those devices or access legal research materials; because the lack of a law librarian or assistant renders these practically unusable; or some combination.[3]

## CONCLUSION

Implementing the steps outlined in this report would not provide Schwindler with everything he wants, but would protect Schwindler's right of access while

---

[3] Schwindler believes his access to the right computers would be resolved if he were housed in an as-yet-to-be-established Veteran's dorm, or to remain in what he calls the "re-entry" dorm. The undersigned recognizes that where the prisoners are housed implicates many rules and policies and is not in a position to advise on that request.

#3341198v1

imposing relatively little burden on Respondent.  The undersigned appreciates the

opportunity to assist the Court, and will remain available to assist further as the

Court wishes and once the parties react or respond to this report.

Respectfully submitted this 18th day of February, 2022.

/s/ Christopher T. Giovinazzo
Christopher T. Giovinazzo
Georgia Bar No. 142165
giovinazzo@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel:  (404) 881-4100
Fax: (404) 881-4111

***Court-appointed Amicus***

20

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2022, a copy of the foregoing **REPORT OF COURT-APPOINTED *AMICUS CURIAE*** was electronically filed with the Clerk of Court using the Court's CM/ECF filing system which will automatically send e-mail notification of such filing to all attorneys of record in the above-referenced action.

*/s/* Christopher T. Giovinazzo
Christopher T. Giovinazzo
Georgia Bar No. 142165

21

#3341198v1