FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2022 MAY 20 A II: 35

CLER____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FRANK JOSEPH SCHWINDLER,

Petitioner,

v.                                        CV416-189

J. KEVIN PERRY, WARDEN,

Respondent.

SCHWINDLER'S POSITION ON SUFFICIENCY AND FEASIBILITY OF AMICUS

RECOMMENDATIONS

COMES NOW FRANK JOSEPH SCHWINDLER, petitioner, pro se, and provides the Court with his position as to the sufficiency and feasibility of the amicus recommendations, as directed by the Court 4/19/22 [Doc. 91], and states:

There are three specific recommendations. Each is discussed in turn:

(1) CREATE A SINGLE THUMB DRIVE/ STORAGE DEVICE WITH ALL OF SCHWINDLER'S RECORDS.

Schwindler believes this is feasible, but that in order for this to be sufficient, the device would need to contain all of the following:

(a) All of CD-1 [Complete record of Chatham County Case 99-CR-0869-KA, and all appeals arising therefrom, and complete record of State Habeas Corpus case from Chattooga, Calhoun, Lowndes, and Hancock Counties]. This should be redacted to remove pornography.

-1-

(b) All of CD-2 [First set of materials provided by State in Northern District of Georgia § 1983 case 1:11-CV-1276-TCB.]

(c) All of CD-3 [Second set of materials provided by State in § 1983 case 1:11-CV-1276-TCB]

(d) All of thumb drive provided by Merritt McAlister for case 1:11-CV-1276-TCB [Case record up until appeal to 11th Circuit]

(e) The social security disability and VA records promised by the State at May 17, 2017 Ellen Cusimano email cited by amicus on page 8.

(f) Complete copy of the record of State habeas corpus case in Macon and Gwinnett Counties, including appeal. [The prison "lost" all paper copies related to this case since 2017.] '

(g) Copy of the record for § 1983 case 1:11-CV-1276-TCB from appeal to 11th Circuit until dismissal in 2017. [The prison "lost" all paper copies to this case since 2017.] [No records exist at prison]

(h) The complete record in this case for both Northern and Southern Districts. [The prison "lost" all paper copies from this case since 2017.] [Only 2 or 3 documents from this case exist at prison.]

---

' Petitioner had all the records at (f),(g) and (h) inside a file box at his work detail in chaplaincy until 11/19/20, when he was informed that Warden Hatcher had ordered him to no longer be permitted in the chaplaincy area. He was referred for unspecified criminal charges, but even after being cleared, none of his personal legal files were returned.

-2-

In addition to the above already created record, Schwindler proposes that some sort of system could be created where newly created documents could be added to the thumb drive so as to eliminate the retention of paper copies. The respondent could electronically serve Schwindler by emailing to the warden, with the warden calling out Schwindler to have the document placed on the thumb drive. The clerk could also return PDF copies of documents filed by Schwindler, and orders of the Court in the same manner. An added benefit of using such a system would be that the warden would be able to verify that Schwindler was not using the thumb drive for any unauthorized purposes. All of the relevant documents and materials would be on the same thumb drive, and there'd be no reason for Schwindler to retain any paper documents related to this case.[2]

---

[2] Schwindler has two other legal actions whose electronic records could be placed on the same thumb drive so as to eliminate the need for Schwindler to maintain any paper records: Superior Court of New Jersey, Morris County Vicinage Case: MRS-L-000123-20; Schwindler v. Patriots' Path Council, BSA; and U.S. Bankruptcy Court for the District of Delaware Case: 20-10343-LSS [U.S. Bankruptcy Court for the District of New Jersey Case: 20-01107-KCF] Chapter 11: Boy Scouts of America and Delaware BSA, LLC. [This all really one case. Schwindler's tort was one of the 275 which led to the BSA bankruptcy — which removed all actions to Federal court.]

(2) Allow Schwindler to maintain possession of the storage device.

This is essential. There should be no problem redacting the pornography. Any PDF editor can be used to black out all such materials. As noted and suggested above, having all future documents emailed to Schwindler via the warden would provide an ongoing method for respondent to verify the thumb drive was properly used by Schwindler. This is feasible because all Truett-McConnell University students (30), and all Georgia State University students (20), as well as most Re-Entry Dorm residents, and most Faith & Character Dorm residents (160 inmates) possess thumb drives for school work and dorm program assignments. In other words, roughly 25% of the general population inmates at phillips already have, or will have thumb drives - virtually none of which are monitored by anyone. As to sufficiency, that depends on providing all the materials noted at (1) above, and providing the access noted at (3) below.

(3) Ensure that Schwindler's computer/library time is with the right equipment.

This is the area at which Schwindler questions both the sufficiency and feasibility of amicus' recommendations.

a. Sufficiency: The GDC SOP [at Exhibit #6 of report] provides only 30 minutes per week for access to LexisNexis information. The 2 hours per week access to legal research materials provided by the

-4-

same SOP is far from sufficient when one considers that 3/4 of the time is limited to using the few volumes of Court Reporters from over 20 years ago which have not been disposed of due to water damage, mold or misuse. The SOP provides for up to 4 additional hours per week for those with deadlines within 30 days, but provides no additional time for LexisNexis access. In Schwindler's case, even assuming that the law library Chrome books were enabled to read a thumb drive [which they currently cannot do], it would be many months before Schwindler could reasonably use the computers for anything beyond re-familiarizing himself with the records themselves [given the fact he's had no access to those records in 5 years]. The Court is undoubtedly aware of the fact that the most competent attorney couldn't become familiar with a case of this size and complexity spending 30 minutes a week. The point is that 30 minutes a week is not sufficient time to do anything in a case with such a large and complex case - and that's without any discussion of LexisNexis access.

The amicus report makes reference to Schwindler's belief that this equipment problem could be resolved by establishment of a Veterans Dorm as has been contemplated at Phillips for over 3 years, at footnote #3. There are a total of 10 general population dorms with 50 men per dorm at Phillips. 2 of the 10 dorms have 5

computers, each of which are available to residents of those dorms more than 90 hours a week. Each of the computers is capable of reading thumbdrives, and each has Microsoft Office installed. The prison has assigned all but 7 of the Truett-McConnell students to either one or the other of these two dorms [Re-entry; Faith & Character]. Both of these dorms are designated as program dorms, and both are located on the A-B yard compound. This yard is isolated from all others at Phillips. The 7 TMU students not in one of two program dorms are housed on the same yard in dorm A2. Everyone on this yard is either in one of the programs, assigned to a work detail, or an honor inmate. 25 of the men currently in A Building are Veterans or Veterans Mentees [That's half of what would be housed in a veterans dorm.] 35 men on A-B yard are Veterans or Mentees. 9 of the TMU students are Veterans. All TMU students need the same sort of access to the same sort of computers as Schwindler. Respondent could easily resolve the needs of Schwindler and the 7 TMU students currently in A2 by relocating the 35 veterans and mentees on A-B yard into A2 [swapping beds with non-veterans in A2], and designating A2 as the Veterans HONOR Dorm, and putting 5 computers into the dorm. In this way, the prison could address several pressing needs and problems at the same time with minimal expenditure of time or money:

-6-

(1) Schwindler would have sufficient access to the equipment needed to re-familiarize himself with the materials which drive his case so that the 30 minutes a week Lexis Nexis access at the law library [assuming at least one computer there was capable of being thumb drive accessible] could be devoted completely to research and copying onto the thumb drive of such portions of case law or horn books for later reference in the dorm. This type of access is currently available to all inmates in the two program dorms by having the law library clerk [inmate] electronically copy Lexis Nexis materials onto their thumb drives for their later use on the program dorms' computers.

(2) All TMU students would have access to computers in their dorms instead of only roughly two thirds of those students having such access. [All TMU students have thumb drives, and access to computers in the TMU part of the education building because all TMU assignments are done electronically, and many TMU resources are only available electronically.]

(3) The prison would be able to make use of the Veterans HONOR[3] Dorm program to prepare 15 of the most at risk and vulnerable inmates for successful reentry into society, while simultaneously keeping them safe and exposing them to the influence of the most mature and educated segment of the inmate population - and helping those veterans regain a sense of dignity and purpose. This potential

---

[3] Helping Our Neighbors Overcome and Rebuild.

benefit is not inconsequential, because these mentees are those young men who have been committing suicide at ever increasing rates due to sexual abuse by predators using meth to lure them into sexual situations, or due to their vulnerability to recruitment by gangs. Neither staff, nor the federal PREA laws can protect them - often from themselves; they are in need of safe dorms, with safe people, and no drugs or gang activity. That is the purpose of the Veterans HONOR Dorm.[4]

Schwindler understands that the Court is not going to order the respondent to establish the Veterans HONOR Dorm, and that such an action would be completely up to respondent, but Schwindler believes that there are only 4 ways reasonably available to meet the sufficiency and feasibility requirements of this 3rd amicus recommendation:

(1) The most elegant solution is the Veterans HONOR Dorm because it resolves three pressing problems.

(2) The respondent could also resolve Schwindler's equipment access problem by putting 5 computers into dorm A2

---

[4] Veterans struggle with drug abuse and suicide at rates far above any other group in society. Incarcerated veterans almost all suffer from PTSD. Phillips has over 70 veterans. The 35 most mature and stable would be in this dorm along with 15 mentees. The dorm would operate under the rules of military conduct and all GDC SOPs.

for use by Schwindler and the 7 TMU students in the dorm. [The drawback to this solution would be the lack of a program in the dorm capable of coordinating or controlling use of these computers.]

(3) Respondent could also resolve Schwindler's access to equipment problem by relocating him to either of the two program dorms. [Relocating Schwindler to either of those dorms would deprive someone who needs those programs of the ability to participate in those programs. Schwindler is technically ineligible for the re-entry dorm, because he has a life sentence. The only "by the book" way to assign Schwindler to the re-entry dorm would be to also assign him as one of the two program aides, but both those positions are occupied by qualified inmates, and it would be improper to reassign either of them so that Schwindler could have access to a computer as set out in this recommendation. Likewise, it would be improper and counter-productive to assign Schwindler to the Faith & Character Program - which he has no interest in repeating, and which he'd need to replace one of the two currently assigned inmate aides.]

(4) The least elegant solution would be to permit Schwindler to purchase a laptop computer as has been ordered in a number of other cases. [Schwindler has no desire to become some sort of special case or privileged character because, among other things, Schwindler believes allowing him to have his own laptop would set a bad precedent; it would require too much monitoring by respondent.]

-9-

There is a fifth potential solution which would require respondent to change a policy which is unlikely to be changed, even though doing so would be in the long term best interests of respondent and the GDC. Quite contrary to respondent's counsel's comments at T.33 that the inmate tablets are "essentially big Game Boys," the tablets are fully functional Android devices which are capable of running several different office programs such as Mobis Systems Office Suite, or Smart Office. The ONLY reason the JPay 5 tablets don't have those applications installed is that the GDC CHOOSES to use them as "big Game Boys." Well over 70% of the tablets at Phillips have been "chain gang broken" to allow them to be fully functional. All it would take for every inmate within the GDC to have Office Suite on their tablets would be for the GDC to direct Securis Technologies to install the application on all tablets. In fact, the GDC could easily allow all tablets to have access to LexisNexis via the terminals in every dorm, and if the courts chose to permit it, 100% of inmate legal work could be conducted electronically. The reality is that if it were not contrary to GDC policy, Schwindler could obtain a "chain gang broken" tablet with Office Suite installed, along with a thumb drive and mini-USB adapter, and resolve the access problems. But, because it is contrary to policy, this option remains unlikely.

-10-

## CONCLUSION

The 3 recommendations would be sufficient IF, but ony if:

(1) All Schwindler's legal files (a) through (h) set forth on pages 1 and 2 are placed onto a thumb drive [with the BSA related records being added for convenience/elimination of all paper records], AND

(2) Schwindler being permitted to maintain possession of the thumbdrive, AND

(3) Respondent agreeing to one of the four potential solutions to the computer access problem set forth on pages 4 to 10 [with the fifth potential solution on page 10 an outside possibility].

Without all three of the above occuring, the recommendations are not sufficient, and Schwindler would again seek appointment of counsel as an exception to the rule due to the exceptional circumstances.

The 3 recommendations should all be feasible as set forth above, including the creation of a system for new documents to be added to the thumb drive as discussed on page 3. Respondent should agree that it is feasible for Schwindler to retain possession of the thumb drive given the number of inmates already possessing thumb drives at Phillips. As discussed at pages 4 to 10, each of the potential solutions to recommendation #3 is feasible, but the 1st potential solution is not only the most elegant, it is the

-11-

most cost effective for respondent due to the potential impact on the most pressing problems facing the prison. While Schwindler would prefer either the 1st, 2nd, or 5th potential resolutions proposed, all of them are feasible for his needs, and should be feasible for respondent as well. If respondent is unwilling or unable to do each of the above, Schwindler would again seek appointment of counsel due to the lack of any feasible way to proceed otherwise.

Schwindler notes for the Court that due to staff shortages, it is highly unlikely he'll be served copy of respondent's position on these recommendations sufficiently in advance of the May 27, 2022 deadline to reply to that position should such a reply be necessary. [Legal mail deliveries are being delayed on average from 7 to 10 days at Phillips due to staff shortages.

Respectfully submitted this 8th day of May, 2022.

_Frank Joseph Schwindler_
FRANK JOSEPH SCHWINDLER
323208/A2.28
PHILLIPS STATE PRISON
2989 W. ROCK QUARRY RD.
BUFORD, GA 30519

< 12 >

CERTIFICATE OF SERVICE

I certify, I've served a copy of these positions on the sufficiency and Feasibility of amicus' recommendations on counsel by mailing to Paula K. Smith; Senior Assistant Attorney General; Georgia Department of Law; 40 Capital Square, SW, Atlanta, GA 30334-1300. This 8th day May, 2022.

Frank Joseph Schwindler

FRANK JOSEPH SCHWINDLER
323208 / A2-28
PHILLIPS STATE PRISON
2989 W. ROCK QUARRY RD.
BUFORD, GA 30519-4118

- 13 -

FRANK SCHWINDLER
323208/A2-2B
PHILLIPS STATE PRISON
2989 W. ROCK QUARRY RD
BUFORD GA 30519

May 8, 2022

Clerk of Court
U. S. District Court
Southern District of Georgia
P.O. Box 1130
Augusta, GA 30903-1130

RE: SCHWINDLER V. WARDEN; 416-CV-189

Dear Clerk of Court,

Please file the enclosed SCHWINDLERS POSITION ON SUFFICIENCY AND FEASIBILITY OF AMICUS RECOMMENDATIONS, and present to the Court for consideration.

I realize that this case is supposed to be in the Savannah Division, but since Magistrate Judge Christopher Ray's order was mailed from this division, I figured I should file this in this division.

That you for your time and assistance.

Respectfully Yours,

Frank Schwindler

FRANK SCHWINDLER

FRANK SCHWINDLER
383208 / A2-2B
PHILLIPS STATE PRISON
2989 W. ROCK QUARRY RD.
BUFORD, GA 30519-4118



CLERK OF COURT
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
P.O. BOX 1130
AUGUSTA, GA 30903-1130

**PHILLIPS STATE PRISON**
**2989 West Rock Quarry Road**
**Buford, GA 30519**
"The enclosed letter was processed through special
mailing procedures for forwarding to you. The letter
has been neither opened nor inspected. If the writer
raises a question or problem over which this facility
or center has jurisdiction, you may wish to return the
material for further information or clarification. If the
writer encloses correspondence for forwarding to
another address, please return the enclosed
to the above address