IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FRANK JOSEPH SCHWINDLER,  *
           *  CIVIL ACTION NO.
  Petitioner,     *  CV416-189
           *
v.          *
           *  HABEAS CORPUS
Warden, Phillips State Prison,  *  28 U.S.C. § 2254
           *
  Respondent.    *

RESPONSE TO RECOMMENDATIONS OF AMICUS CURIAE
(Doc. 91)

COMES NOW Respondent, through counsel, Christopher M. Carr,

Attorney General of the State of Georgia, and makes this his response to

the recommendations of Amicus Curiae and the Court's order (Doc. 91), by

showing by showing and stating as follows:

1.

This is a habeas corpus case in which Petitioner Schwindler is

challenging the validity of his Chatham County convictions for child

molestation, aggravated child molestation, and enticing a child for indecent

purposes on which he is in custody. However, the scope of issues has been

broadened from whether his federal constitutional rights were violated in the

criminal case to whether he currently has access to his legal materials in

order to brief, yet again, the grounds for relief he has raised. Ordinarily,

1

issues about access to courts and conditions of confinement are not cognizable in habeas corpus cases filed by state prisoners. *See, e.g., Muhammad v. Close*, 540 U.S. 749, 750-51 (2004) ("Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. State. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of confinement or to particulars affecting its duration are the province of habeas corpus [cit. omitted]; requests for relief turning on circumstances of confinement may be presented in a §1983 action."); *Cruitt v Alabama*, 647 Fed. Appx. 909 (11th Cir. 2016) (claim alleging a seizure of inmate's legal and evidentiary documents by state officials violated his rights was cognizable under § 1983); *Harris v. Williams*, 2021 U.S. Dist. LEXIS 249801 at *25 n. 12 (S.D. Ala 2021) ("Habeas and civil rights cases are 'mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate . . . civil rights action.' . . . Because claims regarding law library access and grievances can be raised in a civil rights action, those claims cannot be raised in a habeas petition."). Some cases may be "hybrid," with "the prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity of either an underlying conviction or of

2

a particular ground for denying release short of serving the maximum term of confinement." *Close*, 540 U.S. at 751. That is not the situation here. Moreover, lack of ready access to legal paperwork and law libraries are not "extraordinary circumstances" that would warrant equitable tolling of the one-year limitations period. *See, e.g., Paulcin v. McDonough*, 259 Fed. Appx. 211 (11th Cir. 2007).

2.

After determining it had no authority to appoint counsel to represent Petitioner, the Court appointed Amicus Curiae to investigate and submit a report about Petitioner's current access to his legal files. In the report, which recites that copies of materials were lost or difficult to access in the past and which downplays the fact that Petitioner currently has access to paper copies of the transcripts from his state habeas corpus case (15,000 plus pages) which were provided to him again in August 2021[1], Amicus notes that the records Petitioner wants to access are three (3) compact discs and a USB/thumb drive. (Doc. 90, p. 13).

3.

Specifically, the first of the three discs has the 15,000 pages of transcripts from his state habeas case, and the state habeas transcripts

---

[1]*See* Respondent's Exhibit AA (2 boxes totaling 20 volumes of transcript were sent to Petitioner), Exhibit BB at p. 712.

include the records from his trial, direct appeal and a related appeal from the

criminal case.  Petitioner has access to the paper copies of these documents,

as the paper copies were sent to him in August 2021.  He "believes" that the

paper copies of the contents of the second and third discs have "been lost or

inadvertently destroyed" by prison officials.  (Doc. 90, p. 13).  These are the

documents that were provided to him in his now-dismissed civil rights case.

4.

Petitioner further contends that the Warden allegedly promised him

two hours of access to computers every Friday.  *Id*. at 16.  There is NO such

agreement.[2]   The dismissed civil rights case did not include a settlement

agreement of any kind, much less any on-going agreement to allow

---

[2]The email chain between Petitioner's counsel and the Commissioner's
counsel in the civil rights case, which Amicus attached to his report as
Exhibit 5, makes it clear there was no settlement agreement when Petitioner
voluntarily dismissed his civil rights case on the eve of the scheduled bench
trial in the Northern District.  Rather, Petitioner (who was represented by
counsel) agreed to a dismissal with prejudice as to his § 1983 claim in
exchange for the Commissioner's agreement not to seek costs.  (Doc. 90-5,
p. 2, 3).  The Commissioner's attorney had also listed documents that had
been previously provided to Petitioner in that case, which included records
from a criminal case against Petitioner in Muscogee County, transport
documentation for a ship, copies of Canadian maritime laws, investigation
notes from a Chatham County narcotics investigator, the case record for
Dana Brown, and prior convictions records for Richard Roger Brantley (who
is the father of the victim in Petitioner's Chatham criminal case).  (Doc. 90-
15, p. 5).  Petitioner's records from the Social Security Administration and
the Veterans Administration were being processed and to be sent to him.  *Id*.
None of these documents were admitted at the Chatham criminal trial.

Petitioner a certain means of accessing his legal materials, a certain number of hours of access, or that his materials must be on a specific type of device.

5.

In short, Petitioner's access to legal materials should be in keeping with the prison's SOP's, and case law is silent as to what that would entail as Amicus admits in the report. It appears that Petitioner currently has that access, as shown below, but he wants to view his materials via a specific medium and a specific type of device.

6.

As noted in Exhibit 7 to the Amicus report, which is Corrections' SOP about access to courts, "Offenders may request two (2) hours of reference library time per week." (Doc. 90-6, p. 5). However, an offender "who is subject to a court-determined or statutory deadline may request four (4) hours of additional time per week up to thirty days prior to the deadline." *Id*. In addition, offenders "may possess legal materials in their living areas (including law books, purchased by the offender) to the extent said materials do not, in combination with other personal property, create a fire, sanitation, security, or housekeeping problem. This procedure concerning the possession of legal materials does not in any way allow the keeping of

5

additional personal property beyond that allowed under GDC rules." (Doc. 90-6, p. 10).

### 7.

Because the paper copies of the state habeas corpus transcripts were too large to keep in Petitioner's living area, arrangements were made to store them in the prison property room, where they cannot be accessed by other offenders, and he could and can request access to them. Again, Petitioner's stated preference, however, is to be able to view them via a thumb drive.

### 8.

In keeping with that preference, Amicus has recommended: (1) creating a single thumb drive/storage device with all of Schwindler's records on them that he could access by a type of storage device readable by computers, and he could ostensibly save his own notes or other work to this device; (2) let him keep possession of the storage device and ostensibly redact or delete any pornographic images in the record from the device [though he has paper copies of the same images]; and (3) ensure that his computer/library time "is with the right equipment" depending on what storage device is used or acquired by the prison. (Doc. 90 at 18-19).

### 9.

The recommendation to have the documents from the three CD-s

documents put on a single thumb drive is reasonable and could ostensibly be done without creating new rules or new entitlements in habeas corpus cases or risk of being sued.   Again, one disc contains the transcripts of the state habeas corpus hearings, they are referenced by Respondent in his answer and brief addressing the grounds for relief (Doc. 78), and the Eleventh Circuit has required that copies of the state courts records that are referenced by respondents in their answers must be provided to petitioners as well.  *See Rodriguez v. Fla. Dep't of Corr.*, 748 F.3d 1073, 1077 (11th Cir 2014).  The two other discs were provided by Corrections to Petitioner in the course of his now-dismissed civil rights case.  The USB drive stands on different footing:  Respondent's habeas counsel has been advised that the USB drive was provided to Petitioner by his former counsel in the now-dismissed civil rights case, and Petitioner would need to execute some type of waiver of any privilege as to what is on that drive in order for it to be copied or uploaded. If the three discs are put on a thumb drive, then the device which could play it could ostensibly play the USB drive and the USB drive would not have to be copied.

10.

Respondent strenuously objects to the recommendation that Petitioner be permitted to maintain possession of any thumb drive or storage device.

7

The device could readily be used as a weapon and pose a danger to Petitioner and other inmates, and the device could also be used to collect and store pornography without recourse.  Inmates are not allowed to have thumb drives or DVD's of CD's in their possession for security reasons, and, if some inmates do have them, they do not have permission from Corrections to do so.

11.

The third recommendation, i.e., that Petitioner have computer/library time with the right equipment, i.e., a computer that can conduct legal research and read his storage device, is reasonable.  If a thumb drive is made of the contents of the three CD's, Respondent will insure that Petitioner will have access to a device that will allow him to view it.  However, Petitioner's complaints that the lack of a law librarian or assistant make the current devices "practically unusable" and his wish to be moved to "an as-yet-to-be-established Veterans' dorm" or to remain in "the 're-entry' dorm" go far beyond the scope of this Court's immediate concern with his current access to his legal materials and whether Petitioner's federal constitutional rights were violated in the Chatham County case giving rise to his convictions. This case is not a civil rights action or a "wish list" for prison life.

8

CONCLUSION

WHEREFORE, Respondent submits this response to the

recommendations of the Amicus.

Respectfully submitted,

CHRISTOPHER M. CARR
112505
Attorney General

BETH A. BURTON
027500
Deputy Attorney General

s/Paula K. Smith_____
PAULA K. SMITH          662160
Senior Assistant Attorney General

Please serve:

Paula K. Smith
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S. W.
Atlanta, Georgia   30334-1300
Telephone: (404) 458-3288
psmith@law.ga.gov

9

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the within and foregoing

RESPONSE, prior to filing the same, by depositing a copy thereof, postage

prepaid, in the United States Mail, properly addressed upon:


Frank Schwindler
GDC # 323208
Phillips State Prison
2989 W Rock Quarry Road
Buford, Georgia 31519


This 20th day of May, 2022.


s/Paula K. Smith_____ _____
Paula K. Smith
Senior Assistant Attorney General