UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FRANK JOSEPH SCHWINDLER,  )
                          )
        Petitioner,       )
                          )
v.                        )          CV416-189
                          )
                          )
P.O. AHMED HOLT, Warden   )
                          )
                          )
        Respondent.       )

## REPORT AND RECOMMENDATION

Petitioner Frank Schwindler filed his Writ of Habeas Corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254 on May 25, 2016,[1] seeking relief from his 2012 conviction by the Superior Court of Chatham County Georgia. *See generally* doc. 1. By 2019 the case was described as having a "convoluted procedural history," which has included multiple transfers as well as appeals. *See* doc. 57; *see also* doc. 103 at 3-5 (describing transfers and parallel 28 U.S.C. § 1983 case). Most recently, however,

---

[1] Schwindler's Petition was signed and mailed May 25, 2016, and it was filed on the docket on June 6, 2016. *See* doc. 1 at 42. Pursuant to the prisoner mailbox rule, his Petition is considered filed on the date which he delivered it to the prison authorities for mailing. *Taylor v. Williams*, 528 F.3d 847, 849 (11th Cir. 2008).

1

the Court appointed attorney Samuel LeCraw Mikell to represent Petitioner, after Petitioner notified the Court that the Georgia Supreme Court reversed the Georgia Court of Appeals opinion affirming his conviction. *See* doc. 109 at 4; *see also* doc. 112 at 3. Specifically, in *State v. Lane*, the Georgia Supreme Court held that "the proper approach [to ineffective assistance of counsel claims] is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." 838 S.E. 2d 808, 815 (Ga. 2020). In reaching that conclusion, the Georgia Supreme Court reversed a "rule . . . employed by Georgia appellate courts for more than 40 years," and "overrule[d] [its] prior decisions and those of the Court of Appeals that hold that the prejudicial effect of multiple trial court errors may not be considered cumulatively . . ., and disapprove[d] any decisions with language to that effect . . . ." *Id.* Among those decisions was Petitioner's direct appeal, *Schwindler v. State*, 563 S.E. 2d 154 (Ga. Ct. App. 2002). *Id.* at 820.

After the Court appointed him, Mikell filed a brief on Petitioner's behalf arguing that

> "[b]ased on U.S. Supreme Court precedent in place at the time of Mr. Schwindler's convictions underlying this habeas

petition, the Georgia Supreme Court twice overruled the Georgia Court of Appeals' affirmance of said convictions.

Doc. 122 at 1. Counsel Mikell then identified *Lane*, 838 S.E. 2d 808, as well as *George v. State*, 865 S.E.2d 127 (Ga. 2021). Doc. 122 at 1. In the second case overruling the affirmance of Petitioner's convictions, *George*, the Georgia Supreme Court "overruled said affirmance because the Court of Appeals did not apply the long-established "plain view" requirement to the warrantless seizure of evidence." *Id.* at 2. Respondent did not respond, but Mikell filed a supplemental reply brief on Petitioner's behalf. Doc. 123. Petitioner did not move to amend, despite the Court having previously afforded Petitioner, when he was *pro se*, the opportunity to amend to "permit closer focus on those issues and claims remaining after the state habeas proceedings concluded." Doc. 75 at 4. Petitioner's originally filed Petition is thus ripe for disposition, and the Court has considered the newly developed theories for relief without further input from the Respondent.

## I.   Background and Procedural History

In April 1999 a Chatham County grand jury indicted Petitioner Frank Schwindler, who ran a sailing school in the waterways in or near Savannah, Georgia, for child molestation of the victim, identified as

"T.B." (who is now known to be Timothy Brantley), (Counts 1-3), aggravated child molestation (Counts 4-5), enticing a child for indecent purposes (Counts 6-7), sexual exploitation (Count 8), and failing to report school attendance (Count 9). Doc. 40 at 7. The indictment listed two prior convictions, and the State filed a notice of intent to introduce these prior convictions in aggravation of punishment, as well as seek a recidivist sentence of life as punishment for child molestation. *Id.* at 7-8.

Petitioner was initially represented by retained counsel, Dwight Feemster and John Strother, Jr., who represented him at arraignment, filed motions on his behalf and were provided discovery. Doc. 40 at 8. In September 1999 they moved to withdraw, and the motion was granted in a hearing on September 28, 1999. *Id.* Petitioner was thus represented at his March 2000 trial by Emory Bazemore. *Id.* at 8. Bazemore filed additional motions, including motions for funds for an investigator and for an independent neurological examination of Petitioner, on which the Court held a hearing on February 1, 2000. *Id.* The State's various

4

motions, including the similar transaction motion, were heard that day as well. *Id.*

At trial, the court directed a verdict of acquittal on the exploitation of children count, and the jury found Petitioner guilty of the remaining counts. Doc. 40 at 8. Petitioner dismissed Bazemore and represented himself at sentencing, and the Court sentenced him as a recidivist to three concurrent terms of life for child molestation (Counts 1-3); "split" terms of 30 years, serve 25 and the balance on probation, for aggravated child molestation (Counts 4, 5), to run concurrently with each other but consecutively to the life sentences; and concurrent terms of 20 years for enticing a child (Counts 6, 7). *Id.* at 9. The court also imposed a fine of $100, plus court costs, for offense of failing to report school attendance (Count 9). *Id.*

Steven Beauvais was then appointed to represent Petitioner and filed a preliminary motion for new trial. Doc. 40 at 9. He filed a supplemental motion for new trial, adding claims of ineffective assistance of trial counsel among them. *Id.* Petitioner filed a criminal complaint against the prosecuting attorney wherein he accused the prosecutor of misconduct during the trial. He also filed his own brief in support of the

motion for new trial and a rebuttal brief. Petitioner's brief raised ineffective assistance of trial counsel as well as other issues. *Id.* The trial court denied the motion for new trial as amended in March 2001. *Id.* at 10. The Court dismissed the criminal complaint against the prosecutor on the same day. *Id.*

Beauvais then filed Petitioner's appeal, enumerating fifteen errors:

(1) the convictions were obtained using evidence from "illegal" searches on February 8 and 22, 1999;

(2) the indictment violated due process because it was not sufficiently particular and charged three "multiple unrelated offenses" in order to put Petitioner's character in issue;

(3) jurisdiction and venue were improper in Chatham County as to Counts 1, 2, 4, 5, 7 and 9;

(4) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence and O.C.G.A. §§ 17-16-1 et seq.;

(5) Petitioner was denied due process due to erroneous pretrial and trial rulings regarding character evidence;

(6) Petitioner was denied due process by the erroneous admission of three independent crimes: (a) a 1973 Alabama arrest for misdemeanor child molestation of Wendy Brown; (b) a 1985 Alabama conviction for misdemeanor possession of obscene material involving minors; and (c) a 1987 Muscogee County, Georgia, conviction for child molestation;

(7) the court's erroneous pre-trial and evidentiary rulings denied his right to due process in that:

(a) The Court admitted child hearsay statements even though the state did not notify him of its intent to do so in violation of O.C.G.A. § 24-3-16;

(b) Privileged documents were delivered to Elizabeth Colson-Arbogast without Petitioner's permission;

6

(8)  Petitioner was denied the right to cross-examine witnesses;

(9) Petitioner was denied the right to be tried by a fair and impartial jury;

(10) The Court denied Petitioner's Sixth Amendment right to counsel by "forcing Schwindler to choose between self-representation and representation by counsel who had a conflict of interest by virtue of the hostile relationship between counsel and client";

(11) Petitioner was denied effective assistance of counsel in ten instances:

(a) the attorney-client relationship was "so poisoned" that counsel could not be effective and he admitted refusing to file motions his client wanted filed and disregarding his client's instructions about the conduct of the defense;

(b)  counsel had a conflict of interest due to his representation of Robbie Garvin who was Petitioner's cell mate for a period of time;

(c) counsel called Petitioner "a goddamned liar" in court and did not believe his client, which prevented him from presenting an effective defense;

(d) counsel failed to challenge venue as to Counts 1, 2, 4, 5, 7 and 9 on the basis alleged in enumeration 3;

(e)  counsel did not follow Petitioner's directives about who to call or subpoena or recall as witnesses and did not raise "appropriate" challenges to the search warrants;

(f) counsel did not effectively cross-examine Charles Schwindler and show Charles was "coerced" by the State to give testimony helpful to the State;

(g) counsel did not effectively challenge the searches and seizures of evidence, did not effectively cross-examine Detective Strahle about the search and seizure, and did not "effectively" raise arguments about the scope of the search and the "falsified" return;

(h) counsel did not object to the admission of many exhibits illegally seized during the illegal search (including State's Exhibits 11-57, 69, 70, 72, 86-89,133-35, 137-38, 152-53, 155-59);

(i) counsel turned over documents to Elizabeth Colson-Arborgast who then turned them over to police; and

(j) counsel was "ineffective at all stages" prior to his dismissal.

(12) Under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), the State should have been required to prove Petitioner's prior convictions to a jury beyond a reasonable doubt as a prerequisite to sentencing him as a recidivist on Counts 1-3;

(13) the sentences for Counts 1-7 were excessive and in violation of the Eighth Amendment;

(14) the court denied Petitioner the right to represent himself during periods prior to trial when he was unrepresented (September-November 1999) and for his motion for new trial, in violation of *Faretta v. California,* 422 U.S. 806 (1975); and

(15) the proceeding contains so many errors and deprivations of rights that the fundamental fairness of the proceedings is called into question; such that even if none of the previously cited errors demand reversal, all of the errors considered together, in a totality of circumstances, are more than sufficient to necessitate reversal.

Doc. 122-2 at 8-10, 24-25, 32-35.

In October 2001, attorney Beauvais filed a motion for leave to withdraw as appellate counsel. Doc. 40 at 13. The motion stated, in part, that Petitioner was not satisfied with the brief counsel had filed because it did not raise certain issues suggested by Petitioner. Petitioner wanted the brief withdrawn and to submit his own brief *pro se*. *Id*. As an alternative, counsel asked that Petitioner be permitted to file a *pro se* supplement to the appellant's brief. *Id*. The Court of Appeals permitted

Petitioner to file a supplemental brief *pro se.* Petitioner thereafter added eleven more enumerations of error as to the trial:

(16) the State knowingly and deliberately interfered with the defense team in violation of his Sixth Amendment rights, by "coercing" Charles Schwindler to testify for the State;

(17) the introduction of evidence "in violation" of *Simpson v. State,* 523 S.E.2d 320 (Ga. 1994), regarding Petitioner's possession of sexual materials or paraphernalia denied him due process;

(18) his convictions were obtained using evidence illegally obtained from an illegal search and seizure in November 1985 in connection with the Alabama conviction, as that case was "still open" in the Alabama courts for appellate review of the search despite his guilty plea;

(19) the trial court's refusal to provide him adequate access to legal materials violated his Sixth Amendment rights;

(20) the trial court abused its discretion in denying his motion to continue the sentencing hearing;

(21) the trial court's failure to recuse all members of the judicial circuit from considering the claims "of misconduct by trial counsel who serves as a local magistrate' was both plain error and a violation of due process;

(22) the trial court's failure to supplement the record on appeal with *nine* pro se pleadings violated due process;

(23) the evidence was insufficient to support the conviction for Count 3, as the indictment did not allege where the incident occurred;

(24) the evidence was insufficient to support the conviction for Counts 6 and 7, as there was no jurisdiction for Count 7 and no showing that he established the school in South Carolina to lure teen-aged boys there for indecent purposes;

(25) the evidence was insufficient to support the conviction for Count 1, as the ship on which the alleged acts occurred was "in Canadian territory" under international law so that jurisdiction was lacking, and any evidence to show that acts occurred at the apartment in Savannah was "used up" in proving Counts 4 or 5; and

(26) the evidence was insufficient to support the conviction for Count 9, as the school was located in South Carolina.

Doc. 40 at 14-15.    Petitioner also made arguments regarding the dismissal of his criminal complaint against the prosecutor:

(1) the failure of the trial court the failure of the trial court to comply with Uniform Superior Court Rule 25 in addressing the motion to recuse all judges of the circuit violated due process; and
(2) the failure of the trial court to comply with O.C.G.A. § 15-18-27 for a hearing to determine probable cause violated due process.

*Id.* at 15.

The Georgia Court of Appeals found that Petitioner's enumerations of error were either not preserved for appellate review or lacked merit.[2]

---

[2] Petitioner also pursued an appeal *pro se* from the trial court's order which directed that Petitioner be transferred into the state prison system before he had filed the *pro se* certiorari petition in the United States Supreme Court seeking review of the direct appeal decision. *See Schwindler v. State,* 581 S.E. 2d 619 (Ga. Ct. App. 2003), *cert. denied,* 540 U.S. 1225 (2004).    He made claims regarding his right of self-representation post-trial, his access to courts and law libraries, and the completeness of the record in the direct appeal. *Schwindler,* 581 S.E. 2d at 620.  The appellate court held that Petitioner's right of self-representation was not violated by the trial court's refusal to allow him to conduct the post-trial hearings (as it had already decided in the direct appeal); determined that his claim alleging the record in the direct appeal was incomplete lacked merit (as it had already decided in the direct appeal); held that his claims alleging prison officials had obstructed his right of access to the law library and "other legal materials" were not supported by the record; and that the trial court had properly dismissed his "emergency motion for relief' for lack of personal jurisdiction due to the lack of service;" and held that the trial court had properly ordered that Petitioner be transferred into the state prison system before his certiorari petition to the United States Supreme Court was decided.  The Georgia Court of Appeals affirmed the trial court's rulings in April 2003, the Georgia Supreme Court denied certiorari in September 2003, and the United States Supreme Court denied certiorari in March 2004.  *Id.* at 620-22.

Doc. 40 at 15.  As to enumeration number 1, the Court held that though the officers seized material not covered by the search warrant, "[t]he additional seized correspondence, though not specifically listed in the warrant, was sexual in nature and therefore relevant to the suspected crimes; thus, it was properly seized." *Schwindler,* 563 S.E.2d at 160.  As to enumeration number 15, the Georgia Court of appeals declined to apply the so called "cumulative error" rule.  *Id.* at 165-66.  The court rejected all of Petitioner's other arguments and affirmed the judgment of conviction.  The Georgia Supreme Court denied Petitioner's *pro se* certiorari petition, and then the Supreme Court denied his petition for certiorari as well.  *Schwindler,* 563 S.E.2d 154, *cert. denied,* 538 U.S. 2016 (2003).  Doc. 40 at 16.

Petitioner filed his habeas corpus petition in the Superior Court of Chattooga County in 2004.  Doc. 40 at 17.  His case was transferred to Calhoun County, and then, after extensive litigation over Petitioner's legal materials and several more transfers, the case was dismissed on September 27, 2012 under Georgia's "five-year rule," as no order had been entered in the five years after the September 27, 2007 order setting the case for hearing on November 7, 2007.  *See id.* at 17-20.  Petitioner timely

11

filed a renewed petition in the Macon Superior Court on June 19, 2013,

which was then transferred to the Gwinnett County Superior Court. *Id.*

He raised eleven grounds for relief:

(1) The sentences imposed for child molestation (Counts 1-3) were based upon an unconstitutional statute/process which with-holds necessary element from consideration by jury;

(2) The sentences imposed for child molestation (Counts 1-3) were enhanced based upon unconstitutionally obtained conviction in Muscogee County Case 87-CR-54090 which the trial court would not permit to be challenged;

(3) The sentences imposed for aggravated child molestation (Counts 4-5) were based upon unconstitutional statute in which the lesser included offense receives the greater punishment;

(4) Convictions for child molestation and aggravated child molestation and enticing a child are all based on unconstitutional statutes;

(5) Convictions were obtained by use of evidence gained through unconstitutional search and seizure/conviction in Alabama;

(6) The introduction of the sexually explicit photos before any testimony or arguments violated Schwindler's due process rights;

(7) Evidence obtained since the motion for new trial proceedings established that the state withheld significant amounts of favorable evidence;

(8) Agents of the state had engaged in direct obstruction of efforts to challenge conviction;

(9) Transfer to prison system prior to completion of appeals obstructed [Schwindler's] ability to properly prosecute appeals, and was based upon an unconstitutional statute violating due process and equal protection;

(10) Schwindler was deprived of his right to represent himself on appeal by imposition of counsel, contrary to statute and due process; and

(11) Schwindler was denied effective assistance of counsel in his motion for new trial proceedings and on appeal, contrary to due process.

*See generally*, doc. 23 at 25-29.

The state habeas court found that Grounds 1 and 5 were decided adversely against him on appeal and therefore provided no basis for relief; that Grounds Two, Three, Six, Seven, and Ten were procedurally defaulted , that Grounds Four and Nine were abandoned; that Ground Eight did not allege a constitutional violation of Petitioner's rights in the criminal case and therefore provided no basis for relief; and that Ground Eleven lacked merit. *See* doc. 40 at 24-59. The state habeas court's order was signed June 12, 2017. *Id.* at 58.

Meanwhile, Petitioner prematurely filed his federal petition in the Northern District of Georgia in June 2016. Doc. 1. Petitioner's federal habeas corpus Petition seeks relief on 15 Grounds:

(1) Petitioner was denied the right to counsel by trial court forcing choice between hostile counsel with conflict of interest or self-representation without access to law;

(2) Petitioner was denied effective assistance of trial counsel in that Bazemore refused to investigate hist case, perjured himself when he testified he had interviewed witnesses, lacked knowledge of law regarding his prior Alabama conviction, forced Petitioner to testify, refused to prepare him for trial, had a conflict of interest, did not know facts of the case, would not believe Petitioner, and falsely

believed that photos which had been seized in his Alabama case had been admitted as evidence when they had not;

(3) Petitioner was deprived of his right to represent himself on appeal;

(4) Petitioner received ineffective assistance of "imposed" appellate counsel;

(5) Petitioner received sentences for child molestation (Counts 1-3) which were enhanced by unconstitutionally obtained convictions in Muscogee County, Alabama

(6) Petitioner was convicted by use of evidence gained through the unconstitutional search and seizure which resulted in eight sexually explicit photographs which had been obtained in the investigation leading to his Alabama conviction and used to "wallpaper" the courtroom in the currently disputed conviction;

(7) Petitioner was denied due process because those eight sexually explicit photos were displayed before any testimony or arguments had been made;

(8) Sentences were imposed which were based upon an unconstitutional statute/process which withholds necessary element from consideration by the jury;

(9) Evidence obtained since Petitioner's Motion for New Trial proceedings establishes that state withheld significant amounts of favorable evidence, before, during, and after trial;

(10) Petitioner was sentenced based on an unconstitutional statute in which the lesser included offense potentially receives a greater punishment;

(11) Agents of the state engaged in direct obstruction of efforts to challenge Petitioner's conviction;

(12) Petitioner was convicted using evidence gained through illegal searches and seizures on 2/8/99 and 2/22/99 in that the warrant was improperly obtained: no probable cause existed for issuance of the warrants, the warrant was based on hearsay from sources which was not recently associated with the Petitioner's ventures, the warrant was not sufficiently specific, and that despite the massive seizure of electronic files, no inventory was provided;

(13) Jurisdiction and venue in Chatham County was improper as to counts 1, 2, 4, 5, 7, and 9.

(14) Petitioner was denied due process of law by the trial court's erroneous evidentiary rulings; and

14

(15) Petitioner was denied his right to thoroughly cross-examine witnesses.

*Id.* at 11-38.

After the case was transferred to this District from the Northern District, transferred back to the Northern District, and back again, *see* docs. 1, 5, 12, 14, 45, the Court stayed the case and held it in abeyance while Petitioner exhausted his state remedies, docs. 49, 50. After the state habeas court denied relief, Petitioner filed an application for a certificate of probable cause ("CPC") to appeal in the Georgia Supreme Court, which was denied. Doc. 40 at 60-121. While his CPC was pending, Petitioner filed a Rule 60(b) Motion, doc. 51, to set aside the Court's May 4, 2018 Order staying the case, doc. 50. The Court denied his Rule 60(b) Motion, doc. 54, and Petitioner appealed and then sought certiorari review after his appeal was dismissed. Docs. 56, 65, 68. Petitioner filed various motions seeking the Court to issue an order to prohibit his transfer to other prisons or to appoint counsel. *See e.g.,* docs. 69, 70. Those requests were denied. *See, e.g.,* doc. 75. The Court gave Petitioner the opportunity to amend his petition and directed Respondent to file a response thereafter. Docs. 75, 77. Petitioner did not amend, and

Respondent amended his answer and filed a brief in response to the grounds of the original petition. Doc. 78-1.

Petitioner filed other Motions to Appoint Counsel. In his "Renewed" Motion for Counsel, Petitioner explained the difficulty he experienced due to not receiving exhibits to the Respondent's Answer and further difficulties reviewing and responding, which were caused by other factors. Doc. 79. After holding a hearing on that Motion, the Court denied it, but permitted amicus counsel an opportunity to conduct initial inquiries into certain questions regarding Petitioner's ability to access the record of prior proceedings and legal research materials, as well as the facilities and access provided by the Respondent and the Georgia Department of Corrections ("GDC"). Doc. 87. Amicus counsel was instructed to suggest feasible alternatives which would provide Petitioner with the access to the record and legal research to which he was entitled. *Id.* at 7. The Court-Appointed Amicas Curiae filed his brief, the parties responded, docs. 92, 93, and the Court held another hearing, doc. 95. The Court ordered Respondent to deliver thumb drives to the Petitioner for his review of the record. Doc. 96. Petitioner was then

directed to file any reply to the Respondent's Amended Answer.  Doc. 99.

He did not do so.

Petitioner then filed another "Renewed" Motion to Appoint Counsel,
where he again emphasized the difficulty of reviewing the record and
drafting a reply.  Doc. 101.  That Motion was denied, doc. 103, and
Petitioner filed a "Motion for Reconsideration," or in the alternative,
Motion for Certificate of Appealability, doc. 104.  Before the Court ruled
on his Motion for Reconsideration, Petitioner filed yet another Motion to
Appoint Counsel, doc. 109.  This Motion, dated July 21, 2023, indicated
that Petitioner learned three weeks before that the Georgia Supreme
Court had reexamined its cumulative error rule, and had invalidated the
Georgia Court of Appeals' holding on Petitioner's direct appeal.  Doc. 109
at 4.  Petitioner noted that the Georgia Supreme Court's opinion
addressed what had been "one of his primary contentions since his own
trial."  *Id*.  Though Petitioner made this argument in support of his
request for counsel, he did not seek to amend his Petition.  The Court
thereafter granted him counsel and appointed Samuel LeCraw Mikell to
represent Petitioner, given the complications regarding the cumulative

17

error rule, as revisited by the Georgia Supreme Court in *Lane*. Doc. 112 at 4.

Mikell filed a brief on Petitioner's behalf making arguments not only regarding the impacts of *Lane* on Petitioner's habeas case, but also argued that *George v. State*, 865 S.E.2d 127 (Ga. 2021) invalidated the Georgia Court of Appeals affirmance of Petitioner's conviction on other grounds as well. *See* doc. 122. As explained, *George* overruled Petitioner's direct appeal affirmance because the Court of Appeals failed to apply the plain view requirement to the warrantless seizure of evidence. Under the "plain view" doctrine, for evidence to be admissible, "the incriminating nature of the object must be 'immediately apparent.'" *George*, 865 S.E.2d at 130 (quoting *Moss v. State*, 561 S.E.2d 382 (Ga. 2002). Further, "the item in question must be clearly visible, and the officer may not manipulate or disturb it in order to acquire probable cause to believe the item is evidence of a crime." *Id.* (citing *Arizona v. Hicks*, 480 U.S. 321 (1987)). Petitioner argued through counsel that law enforcement "went into a Styrofoam cooler under Mr. Schwindler's bed," which was not listed in the warrant, and seized letters stored therein between Mr. Schwindler and another adult male which were sexual in

18

nature, also not listed in the warrant, and used that evidence to show Petitioner's "lustful disposition" in violation of the Fourth Amendment. Doc. 122 at 7-8. Mikell's brief associates the *Lane* cumulative error argument with Ground Two and the *George* Fourth Amendment argument with Ground Twelve. *See id.* at 3, 7. Mikell also made arguments on Petitioner's behalf in support of Grounds Seven, Eleven and Nine, but stated Petitioner did not "concede, abandon, or waive any other counts." *Id.* at 3.

## II. Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides "[a] general framework of substantial deference [for] our review of every issue that the state courts have decided" on the merits. *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005). Under that Act, a federal court shall not grant habeas relief on any claim "adjudicated on the merits" in state court unless the state court's decision denying relief was either "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

For purposes of § 2254(d)(1), the phrase "clearly established federal law" refers only "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The decision of a state court is "contrary to" clearly established federal law when the state court "applied a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Dill v. Allen*, 488 F.3d 1344, 1353 (11th Cir. 2007). And a state court's application of federal law is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Harrington*, 562 U.S. at 101 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law." (internal citation, quotation and emphasis omitted)). Here, "[t]he key word is 'unreasonable,' which is more than simply incorrect."

20

*Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1354 (11th Cir. 2020). To meet this standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (internal quotations omitted)).

Under § 2254(d)(2), courts also must defer to a state court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) works much like § 2254(d)(1) in that it requires federal courts to give state courts "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). "We may not characterize . . . state-court factual determinations as unreasonable 'merely because we would have reached a different conclusion in the first instance.'" *Id.* at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (alteration adopted). District courts presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary. *Pye*, 50 F.4th at 1035; 28 U.S.C. § 2254(e)(1). In sum, AEDPA sets "a difficult to meet, [cit.], and

21

highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

A critical prerequisite for any state petitioner seeking federal habeas relief is the requirement that he first properly raise the federal constitutional claim in the state courts. *See* 28 U.S.C. § 2254(b). "The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010) (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). The statute provides that:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  *Ward*, 592 F.3d at 1156 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  A claim is procedurally defaulted if the petitioner failed to exhaust his state remedies, and the court to which he would have to present his claims in order to satisfy the exhaustion requirement would find the claims procedurally barred.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).  The doctrine of procedural default also dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim."  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

Even if the state court never had an opportunity to review the claim and it is thereby procedurally defaulted at federal habeas, a petitioner may obtain federal review of that claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). To show cause, the petitioner must demonstrate "some objective factor external to the defense" that impeded his effort to raise the claim properly in state court. *Murray*, 477 U.S. at 488. Once cause is established, the petitioner also must show actual prejudice from the alleged constitutional violation. *See Sykes,* 433 U.S. at 84. To show prejudice, a petitioner must demonstrate that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992). A federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.* at 496.

24

Moreover, in this collateral habeas proceeding, even if Petitioner meets his burden to show there has been a constitutional error, the question turns on whether that error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting United States v. Lane*, 474 U.S. 438, 449 (1986)). "Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015) (quotation marks omitted). "There must be more than a 'reasonable possibility' that the error was harmful." *Id.* (quoting *Brecht*, 507 U.S. at 637). "Harmlessness under the *Brecht* standard is a question of law," *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012), and the constitutional error is reviewed "in relation to all else that happened at trial," *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012) (quotation marks omitted).

### III.  Discussion

The Court finds that Ground One, parts of Ground Two, Ground Four, Ground Eight, Ground Thirteen, and Ground Fourteen were decided on the merits by either the Georgia Court of Appeals or the state

habeas court, and thus applies the above-discussed AEDPA deference to those decisions. *Williams v. Alabama*, 791 F.3d 1267, 1272 (11th Cir. 2015); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that the last state court decision that provides relevant rationale is where the federal court should "train its attention."). The state habeas court's procedural default holdings on Grounds Three, Five, Seven, Eight (to an extent), Nine, Ten, and Fifteen were independent and adequate, and thus preclude any subsequent federal habeas review of those Grounds. *Judd*, 250 F.3d at 1313 (citing *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990)). Parts of Ground Two, Ground Six, Ground Eleven, and Ground Twelve are not properly before the Court, lack merit, and are factually and legally unsupported.

*A. Ground One: Trial Court Error*

Petitioner argues in Ground One that he was denied the right to trial counsel when the trial court forced him to choose between a hostile counsel with a conflict of interest or self-representation without access to "law." Doc. 1 at 11. He claims that the trial court relieved his retained counsel, Feemster, due to a "conflict of interest induced by state concerning role [his] son played inside defense team." *Id.* He claims he

26

was given the option to accept "imposed hostile magistrate Emory Bazemore," who Petitioner alleges had his own conflict of interest, or represent himself without access to the law library or legal materials. *Id.* He claims Bazemore "refused to listen to anything [he] said," and that he "repeatedly and loudly called [him] a 'God-damned' liar in the courtroom during trial." *Id.* According to Petitioner, Bazemore insisted that he testify but refused to prepare him or call any witnesses. Bazemore purportedly later lied on the stand about having interviewed witnesses and caused others to perjure themselves in his case. Petitioner claims Bazemore "had every fact in [his] case wrong due to having not investigated." *Id.*

Petitioner appealed this Ground, *see id.* at 12, but he did not argue it in his state habeas petition, *id.*; *see also* doc. 23 at 15-31. The Georgia Court of Appeals found no violation of the right to counsel or the right to self-representation. *Schwindler*, 563 S.E.2d at 160. The Respondent argues this Court should defer to that court's holding and deny relief. Doc. 78-1 at 10. Other than his Petition and miscellaneous arguments made in support of his motions for counsel which generally assert the merits of Ground One, Petitioner never responded to Respondent's

27

argument regarding the deference owed to the Georgia Court of Appeals on this issue.

Given the claim's crux is highly factual, the Court first considers the state appellate court's review of the record to determine if the decision was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2). In reviewing the factual record, the Georgia Court of Appeals found that the trial court did not force Petitioner to accept unwanted counsel, but instead, the trial court "complied with Schwindler's request for appointed trial counsel to take the place of retained counsel." *Schwindler*, 563 S.E.2d at 164. The appellate court also noted that the trial court instructed counsel to consider four *pro se* motions filed by Petitioner during the brief time he was unrepresented. *Id.*

When Petitioner sought to replace appointed counsel, the Court informed him that he could not pick and choose appointed counsel. *Schwindler*, 563 S.E.2d at 164. According to the Georgia Court of Appeals, Petitioner could not provide a substantial reason for replacing counsel. *Id.* Instead, he complained that counsel had not filed motions to exclude the similar transaction evidence and to object to venue and

28

jurisdiction.  In response to his argument, the trial court pointed out that the very hearing being held that day was to determine whether to allow in the similar transaction evidence and that no motion was necessary. The trial court also noted that the State had the obligation to prove venue and jurisdiction as a part of its case, and thus, again, a motion was unnecessary.  *Id.*  The trial court denied the request for new counsel, but it indeed asked whether Petitioner wanted to represent himself *pro se*. The appellate court's review of the record indicated that Petitioner hinted that he may want "hybrid counsel," but then decided against it because he felt there could only be "one captain on the ship."  *Id.*  Since Petitioner was equivocal in his response and did not express a desire to proceed *pro se*, the trial court discerned no request for *pro se* representation and allowed appointed counsel to proceed.  *Id.*  The Georgia Court of Appeals found no abuse of discretion regarding that decision.

The Georgia Court of Appeals noted that Petitioner later complained about Bazemore, claiming he was not listening to him, and that he had called Petitioner a liar when Petitioner accused him of misconduct. *Schwindler*, 563 S.E.2d at 164.  Later that day, Petitioner changed his mind and announced that his difficulties with counsel had

been resolved and that he wanted counsel to continue to represent him. *Id.* Thus, according to the appellate court, any possible error in not allowing Petitioner to obtain other counsel, or to proceed *pro se* earlier was rendered harmless. *Id.* (citing *Williams v. State,* 358 S.E.2d 914 (Ga. Ct. App. 1987)).

However, at the sentencing hearing, Petitioner demanded that his trial counsel be dismissed and that he be permitted to proceed *pro se*, and the trial court granted his request after making an inquiry. The trial court, however, invited Petitioner to request the appointment of appellate counsel for post-sentencing proceedings. *Schwindler*, 563 S.E.2d at 164. After sentencing, Petitioner announced his desire for appellate counsel, and the court appointed one. Petitioner again changed his mind at the motion for new trial hearing, announcing he wanted to be co-counsel. *Id.* at 165. The trial court initially allowed the hybrid representation but later disallowed it by permitting only appellate counsel to address the court. The Georgia Court of Appeals again found that this decision was within the trial court's discretion, given a defendant has no right to hybrid representation. *Id.*

The merits of this claim largely hinge on differences between the Court of Appeals' and Petitioner's respective characterizations of the facts. For example, Petitioner claims that his trial counsel was hostile and called him a liar "in the courtroom during trial." Doc. 1 at 11. The Georgia Court of Appeals' articulation of the record makes clear that the accusation was not in front of the jury, *Schwindler*, 563 S.E.2d at 164, and Petitioner does not contradict that. Petitioner also alleges that appointed counsel was thrust upon him when the trial court "relieved" his retained counsel, doc. 1 at 11, but the Georgia Court of Appeals noted that it was Petitioner who requested for appointed trial counsel to take the place of retained counsel, *Schwindler*, 563 S.E.2d at 164. Petitioner claims he was placed in an impossible position of having to choose between Bazemore or representing himself without access to the law library or legal materials, but the Georgia Court of Appeals noted that Petitioner refused to proceed *pro se* because he felt there could only be "one captain on the ship"—not because of an access to legal materials issue. *Compare* doc. 1 at 11, *with Schwindler*, 563 S.E.2d at 164.

"AEDPA 'imposes a highly deferential standard for evaluating state court rulings' and 'demands that state-court decisions be given the

31

benefit of the doubt.'"  *Bishop v. Warden, GDCP,* 726 F.3d 1243, 1253 (11th Cir. 2013) (quoting *Renico v. Lett,* 559 U.S. 766, 773, (2010)).  "[A] state court's factual determinations are 'presumed to be correct,' and the petitioner has the burden of proving otherwise 'by clear and convincing evidence.'"  *Pye,* 50 F.4th at 1035 (quoting 28 U.S.C. § 2254(e)(1)).  As applicable here, an application for writ of habeas corpus "shall not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Under § 2254(d)(2), "[t]he question . . .  is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).  The Supreme Court has conceded that "the term 'unreasonable' is no doubt difficult to define," *Wood,* 558 U.S. at 301 (quoting *Williams,* 529 U.S. at 410 (internal quotation marks omitted)), but the Court has instructed that it is not sufficient that "the federal habeas court would have reached a different conclusion in the first instance," *id.* That is, the state court's

32

determination must be "objectively unreasonable." *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003).

The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was "too powerful to conclude anything but [the petitioner's factual claim]," *Miller–El v. Dretke*, 545 U.S. 231, 265 (2005), and when a state court's finding was "clearly erroneous," *Wiggins v. Smith,* 539 U.S. 510, 528–29 (2003). However, "[e]ven if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye*, 50 F.4th at 1035 (internal quotation marks and citation omitted). "Depending on the importance of the factual error to the state court's ultimate decision, that decision might still be reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on' any such determination." *Id. (citing Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (quotation marks omitted).

33

Petitioner has made no argument as to the factual determinations justifying the Georgia Court of Appeals' decision, but even if he had, this Court would find his argument meritless. As to whether trial counsel was replaced on Petitioner's behest, the factual discrepancy does not support his claim that Bazemore was unwanted because, at that time, there was no hostility between Petitioner and Bazemore. It was only after he was appointed that Petitioner became unhappy with his performance. Thus, Petitioner's examples of Bazemore's failures do not support a trial-court-error claim that he was denied right to counsel when Bazemore replaced Feemster. Thus, this alleged factual error would not render the appellate court's decision on the claim unreasonable. The Court does not find this supposed discrepancy of facts meaningful in the overall analysis. *See Pye*, 50 F.4th at 1035 (even if §2254(e)(1) burden is carried, depending on importance of factual error to ultimate decision, decision may still be "reasonable" under §2254(d)(2)). Petitioner's recitation of the facts is also conveniently vague about the timing of Bazemore's accusations, suggesting Bazemore called him a liar in front of the jury when he did not. *See* doc. 1 at 11. Given Petitioner's failure to present clear and convincing evidence that the Georgia Court of

34

Appeals mischaracterized the facts, its determination is entitled to deference.

Consequently, his argument that he was denied his right to counsel also fails, as the facts as articulated by the Georgia Court of Appeals indicate there is simply no denial of right to counsel. As to its determination of federal law, as determined by the Supreme Court of the United States, *see* § 2254(d)(1), the Georgia Court of Appeals recognized that a defendant has a federal right to represent himself in addition to the right to counsel but that he is not entitled to have appointed counsel replaced at will. This is not an unreasonable application of law. *Wheat v. United States*, 486 U.S. 153, 159 (1988). The appellate court also found that Petitioner had not provided a valid basis to have counsel discharged before trial and therefore could not have him replaced arbitrarily: another reasonable conclusion. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

Finally, after reviewing the record, the Georgia Court of Appeals found that Petitioner did not clearly and unequivocally invoke his right to represent himself prior to or during trial and noted that he wanted counsel to continue to represent him at trial. It therefore found no

constitutional violation.  This constitutes a reasonable application of *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975).  *Faretta* recognized the Sixth Amendment provides a defendant with a right to represent himself at trial but required the defendant to "clearly and unequivocally" declare his desire to do so before the right was implicated.  *Id.* at 835.  Petitioner has not shown the Georgia Court of Appeals decision concerning Ground One was an unreasonable application of law.  Therefore, Ground One should be dismissed.

*B. Ground Two: Ineffective Assistance of Trial Counsel*

Petitioner's Ground Two asserts ineffective assistance of trial counsel.  Doc. 1 at 13.  Petitioner's complaints regarding Bazemore are that:

(i)     he refused to investigate case and perjured self when testified he'd interviewed witnesses;

(ii)    Pat McGuire, Erick Williams, Debbie Williams, Captains Walbridge & Schwisow, Josh Brantley, Amy Perry all offered sworn statements that he refused to talk with them;

(iii)   no potential witness could be found he had interviewed;

(iv)    he did not know law about challenging Alabama search or prior convictions;

(v)     he insisted Petitioner had to testify, but refused to prepare Petitioner for trial;

(vi)    he had a real conflict of interest involving Robbie Garvin that led to disruption of Petitioner's legal files prior to motion for new trial by the D.A.'s office;

> (vii) he had virtually every fact about the case and Petitioner's background wrong; and
>
> (viii) he could not properly or effectively examine any of the witnesses because he refused to believe anything Petitioner said and would not speak to anyone he referred him to.  Petitioner claims that, as an "example [Bazemore] believed that the photos seized in 11/85 were admitted as evidence in Alabama.  They were not."

*Id.*.[3]

### i.    Procedural History of IAC Trial Counsel Claim

After Mikell was appointed (which was eight years after Petitioner filed his Petition), Petitioner reasserted the argument that Bazemore was ineffective, but also argued, relying on *Lane*, that, because the state courts did not evaluate Petitioner's ineffective assistance claim cumulatively, their opinions constitute an unreasonable application of law.  Doc. 122 at 6 (citing *Lane*, 838 S.E.2d at 814).  Further, Petitioner argued that "when all of trial counsel's errors are considered cumulatively—especially calling Mr. Schwindler a "goddamned liar" during trial and refusing to take even one single action requested by Mr.

---

[3] This Ground has been subdivided into eight different subclaims by the Respondent without objection from Petitioner, and those identifying enumerations are included in the block quote above.  The Court recognizes that there is overlap between the factual allegations underlying Petitioner's ineffective assistance claim (Ground 2), and his Ground One, discussed above, which argued trial court error.  For completeness, the Court has considered Petitioner's arguments even if they arose in Ground One and were merely relevant to those asserted in Ground Two.

Schwindler—counsel was ineffective." Doc. 123 at 2. Respondent did not file a response brief.

Petitioner's Supplemental brief thus implicitly makes two arguments: (1) the state courts are not entitled to deference on Petitioner's ineffective assistance claim because their application of *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984) was unreasonable, as was later suggested by the Georgia Supreme Court; and (2) an independent cumulative error *Strickland* claim. *See* docs. 1, 122 & 123. To succeed on an ineffective assistance of counsel claim, Petitioner has the burden of demonstrating both deficient performance and prejudice: he must establish both that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694; *accord Wiggins,* 539 U.S. at 521–22; *Darden v. Wainwright,* 477 U.S. 168, 184 (1986). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Moreover, the Court need not apply *Strickland de novo*, but rather through the additional prism of AEDPA deference. *Bishop*, 726

38

F.3d at 1254 (citing 28 U.S.C. § 2254(d)(1)).  Under this standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington,* 562 U.S. at 101; *accord id.* ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").

Petitioner did not bring his ineffective assistance of trial counsel claim at state habeas.  *See generally*, doc. 40.  However, he did assert this claim on direct appeal to the Georgia Court of Appeals.  Doc. 122-2 at 30-34.  Respondent argues that the Georgia Court of Appeals' decision warrants deference as to some of his ineffective assistance claims.  Doc. 78-1 at 19.  Specifically, Petitioner appealed the following claims: (1) counsel refused to file "motions" as instructed by Petitioner and also thought that Petitioner "had poisoned the mind" of another of his clients, Robbie Garvin (presently Subclaim (i)); (2) counsel had a "conflict of interest" due to his representation of Garvin who was Petitioner's cellmate for a period time (presently Subclaim (vi)); (3) his post-trial testimony indicated counsel "did not believe anything" related to him by Petitioner (presently Subclaim (viii); and (4) counsel did not call and

39

subpoena witnesses as directed (not presently argued). The Respondent also notes that though Petitioner filed three *pro se* appellant's briefs, he did not address the ineffective assistance claim in his briefs. Therefore, the above claims were the only ones which were brought to the Georgia Court of Appeals.

ii.   Petitioner did not Exhaust Some of His Ineffective Assistance Claims.

Respondent argues Petitioner did not assert the following subclaims on appeal:

> **Subclaim (ii)**: Pat McGuire, Erick Williams, Debbie Williams, Captains Walbridge & Schwisow, Josh Brantley, Amy Perry all offered sworn statements that Bazemore refused to talk with them;
> **Subclaim (iii)**: No potential witness could be found [Bazemore] had interviewed;
> **Subclaim (iv)**: Bazemore did not know law about challenging Alabama search or prior convictions;
> **Subclaim (v)**: Bazemore insisted I had to testify, but refused to prepare me for trial;
> **Subclaim (vii)**: Bazemore had virtually every fact about the case and my background wrong.

Doc. 78-1 at 23; *see also* doc. 1 at 13. Respondent argues that these subclaims are therefore defaulted. Petitioner never disputes Respondent's classification of these "subclaims" as independent of one another and he never addresses Respondent's exhaustion argument.

Indeed, exhaustion requires more than showing "that the federal habeas petitioner has been through the state courts," "that all the facts necessary to support the claim were before the state courts," or "that a somewhat similar state-law claim was made." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (cleaned up). Likewise, "'scatter[ing] some makeshift needles in the haystack of the state court record'" falls short of exhaustion. *Kelley v. Sec'y, Fla. Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004)[4] (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). Instead, to exhaust properly, the state court record must reveal a federal claim's "particular legal basis and specific factual foundation." *Kelley*, 377 F.3d at 1345. Accordingly, "'[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Id.* (quoting *Martens*, 836 F.2d at 717). Therefore, since these subclaims are unexhausted, they

---

[4] In *Kelley*, the petitioner's argument to the state courts concerned a "broad Failure to Develop Defense Theories" claim; his federal petition asserted claims for "failure to investigate, to depose witnesses, to present a case in defense, and to perform other basic defense functions." 377 F.3d at 1331, 1346. The Eleventh Circuit found that the district court should have dismissed Kelley's § 2254 failure to investigate claim, holding that it was "not merely a clarified rendition of an exhausted claim, but a new one altogether," different from his defense theory claim. *Id.* at 1348. The same is true here.

are not properly before the Court.  And, because they would now be procedurally barred in state court due to a state law procedural default, they should be dismissed as procedurally defaulted here as well. *Snowden,* 135 F.3d at 736.

    iii.    <u>Deference is Owed to the State Habeas Court on Petitioner's Exhausted Claims</u>

Turning to Petitioner's exhausted claims, Respondent argues that the state appellate court's merits decision warrants deference because it applied the *Strickland* test in a manner which was not unreasonable. Doc. 78-1 at 22; *see also Strickland,* 466 U.S. 668.  The Georgia Court of Appeals "carefully reviewed the trial transcript and the motion for new trial transcript, in which Schwindler's trial counsel defended his decisions on the various strategic matters challenged by Schwindler." *Schwindler*, 563 S.E.2d at 165.  The court found that "ample evidence" supported trial counsel's decisions. *Id.*  The Court found it unnecessary to "address specifically and individually each and every one of Petitioner's numerous instances of challenged trial tactics."  *Id.* However, the court did hold that most of Petitioner's complaints about his trial counsel constituted "strategic and tactical decisions that, after thorough investigation and client consultation," which it considered

"virtually unchallengeable." *Id.* For example, as to Petitioner's complaint that counsel improperly turned over privileged documents to a third party, the court found that Petitioner had given an express instruction to counsel to turn over those documents. It held that the "findings of the trial court against Schwindler on this matter are not clearly erroneous," and denied relief. *Id.*

Indeed, the record reflects that the Georgia Court of Appeals' interpretation of the facts regarding Petitioner's trial counsel is reasonable. The Court has reviewed trial counsel's testimony regarding his tactical choices and the reasons he did not pursue certain avenues of defense. First, as to Petitioner's attempted defense that he had a broken neck and was physically incapable of the accused acts, trial counsel retained a physician to examine Petitioner but did not find this avenue convincing because the physician found only minor issues. Doc. 122-3 at 129-30. Also, contrary to Petitioner's assertions, his trial counsel testified his team investigated witnesses listed by Petitioner, but none were able to support the theory of defense or could even testify to relevant matters. *Id.* at 150-51.

43

As to Petitioner's complaint that he was forced to testify, trial counsel testified, "a team of wild horses couldn't have kept Frank Schwindler off this witness stand," meaning Petitioner was the one who insisted on testifying. Doc. 122-3 at 145. Furthermore, according to trial counsel, Petitioner was the one who made the decision on the stand to provide irrelevant and unhelpful evidence which exposed his own self-aggrandizing and dishonest nature. *See id.* at 146-47 (Bazemore testifying as to Petitioner's testimony regarding how he "saved the missile program for the Navy," and how he was not a captain in the Navy but instead carried the title "captain" due to his occupation).

Trial counsel also explained that he did call Petitioner a liar but clarified that it was while the jury was outside the courtroom after Petitioner accused him of disclosing attorney-client communications to a third party. *See* doc. 122-3 at 137-40. Trial counsel explained that, on Petitioner's instruction, he contacted a woman, "Ms. Colson," to deliver some documents to her which, according to Petitioner, contained "nothing of importance," *i.e.*, "paper or documentation, bank statements, and et cetera." *Id.* at 138. Colson eventually found potentially incriminating items in the box, and she turned the box of materials over to the District

44

Attorney's office.  *Id.*  However, none of the items in the box were used at trial.  *Id.* at 139.  The Georgia Court of Appeals held that Petitioner's claim that his counsel was ineffective for improperly turning over "privileged documents to a third party" failed "in light of Schwindler's express instruction to counsel to turn over those documents." *Schwindler*, 563 S.E.2d at 165.    This is not an unreasonable interpretation of the facts, and thus the Court defers to the state court's characterization of them.  The same is true as to the facts as presented by the state habeas court.  *See* doc. 40 at 26-39.

There was one ineffective assistance claim brought on appeal that the Georgia Court of Appeals did not address at all.  Petitioner alleged that his trial counsel had a conflict of interest due to trial counsel's simultaneous representation of Petitioner and another defendant, Robbie Garvin, who was not arrested on charges related to this case.  Doc. 122-2 at 32-33.  Petitioner again asserts this claim, and thus the Court reviewed the transcripts to determine its merits, though it cannot attribute deference.  Doc. 1 at 13; doc. 122-3.  Robbie Garvin, who was believed to be a young adult around 17 years old, was Petitioner's cellmate.  Doc. 122-3 at 132-134.  Trial counsel testified that he learned

45

Garvin and Petitioner became "involved." *Id.* Trial counsel testified that he asked the prosecutor to assist in getting the two separated at the jail, and he contacted Garvin's mother after he learned of the relationship to express his concerns. *Id.* at 135. Trial counsel also believed that Petitioner was influencing Garvin and caused him to distrust trial counsel's advice to Garvin. *Id.* Trial counsel eventually withdrew from Garvin's case. *Id.* at 136. Though the appellate court did not rule on this issue specifically, it found that none of Petitioner's ineffective assistance claims had merit, noting it was declining to specifically identify each allegation made. Pursuant to the below analysis, this Court finds no ineffective assistance related to these facts.

Next, the Court must consider whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner has argued that, since the Georgia Court of Appeals did not apply *Strickland* in the manner now considered proper by the Georgia Supreme Court, the Court's deference is inappropriate. *See* doc. 122 at 5. As noted by Petitioner, however, the Georgia Supreme Court explained that "the authority from the United States Supreme Court *appears to favor* a

cumulative error approach . . . in *other contexts*." *Id.* (emphasis added). The standard for finding a state court decision unreasonable under § 2254 requires a much higher denouncement than that. "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was *contrary to*' federal law then clearly established in the holdings of [the United States Supreme Court], § 2254(d)(1); *Williams,* 529 U.S. at 412; or that it 'involved an unreasonable application of' such law, § 2254(d)(1) . . . ." *Harrington*, 562 U.S. at 100 (cleaned up) (emphasis added). An unreasonable application of law is more than an incorrect application of law; a petitioner must show that a state court's decision is "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn,* 592 U.S. at 118 (quoting *Harrington*, 562 U.S. at 103).

The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza,* 540 U.S. 12, 18 (2003); *Lockyer v. Andrade,* 538 U.S. 63, 75 (U.S. 2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). The Georgia Court of Appeals'

error mandating an overruling by the Georgia Supreme Court was not, in this case, a decision "so obviously wrong" that no reasonable judge could have arrived at the same conclusion. Instead, the Georgia Supreme Court found that United States Supreme Court precedent "appears to favor" a cumulative approach and therefore found that there was "essentially no good reasoning" for its prior rule. *Lane*, 838 S.E.2d at 814. This does not reach the threshold of what is required under § 2254(d)(1) to pierce the finality of the state court's decision. Even if the Georgia Supreme Court interpreted United States Supreme Court or federal law to require the cumulative approach, such a holding would not require federal relief, since Petitioner has pointed to no Supreme Court case mandating habeas relief when the cumulative approach has been ignored in the first instance. *See generally* doc. 122.

Furthermore, as was specifically noted by Petitioner, the Georgia Supreme Court in *Lane* held that "[t]he United States Supreme Court has told us explicitly that we must consider *prejudice* collectively in the context of ineffective assistance of counsel . . . ." Doc. 122 at 6 (citing *Lane*, 838 S.E.2d at 814). Here, the Georgia Supreme Court rested its decision regarding Petitioner's ineffective assistance claim on the *deficient*

*performance* prong.  *Schwindler*, 563 S.E.2d at 165 ("Suffice it to say that the decisions on which witnesses to call, whether to put on evidence so as to preserve the final word in closing argument, how to conduct cross-examinations, what motions to file, and what objections to make are strategic and tactical decisions that, after thorough investigation and client consultation, are virtually unchallengeable and do not require a finding of ineffective assistance of counsel.")  Thus, even if a general rejection of the existence of a cumulative claim's availability was incorrect under what is now Georgia law, it would not impact the affirmance since he failed to carry his burden on the other prong, deficient performance.  The Georgia Court of Appeals could not have found instances of prejudice to accumulate without finding any deficient performance.

    iv.   <u>Petitioner Has Not Shown Ineffective Assistance of Counsel</u>

Even if the Georgia Court of Appeals' decision was incorrect in flatly rejecting the availability of a cumulative error claim, and thus did not warrant deference, the Court finds there were no errors because there was no deficient performance.  After reviewing the record, it is clear that Petitioner's claim fails on the first *Strickland* prong.  Indeed, "no absolute

duty exists to investigate particular facts or a certain line of defense." *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000). "Under *Strickland*, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance. *Id.* (citing and quoting parenthetically *Strickland*, 466 U.S. at 690 (counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary")). Petitioner has not shown his trial counsel performed in a constitutionally deficient manner.

However, to be clear, even though it has reviewed the record and considered the claim directly, the Court finds that deference *is* owed to the Georgia Court of Appeals' decision despite the Georgia Supreme Court's later reversal in *Lane*. The Court finds that Petitioner has not shown that the Georgia Court of Appeals' decision on his ineffective assistance subclaims was unreasonable under § 2254. As to the first prong under the *Strickland* standard, the appellate court correctly noted that Petitioner bore the burden to show that trial counsel's performance was deficient. *Schwindler*, 563 S.E.2d at 165. The Georgia Court of Appeals rested its opinion on that prong by finding that trial counsel's

performance was not deficient. The Georgia Supreme Court's reversal on the cumulative error analysis does not alter the deference afforded by this Court because the change in state law does not meet the § 2254(d)(1) standard. Therefore, Petitioner's ineffective assistance of trial counsel claim, Ground Two, fails and should be dismissed.

     v.     <u>Petitioner's Independent Cumulative Error Claim Fails</u>

Petitioner's second argument on the cumulative error issue which seeks a discrete cumulative error claim—that there were errors which, when considered cumulatively, mandate relief in federal court, fails as well. First, it was not asserted in Petitioner's Petition, and he has not sought to amend the Petition. Doc. 1; *see generally*, docket. He may not now brief it. When filing a petition pursuant to § 2254, "[h]abeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing Rules Governing Section 2254, Rule 2(c)). Habeas petitions must contain "'fact pleading' as opposed to 'notice pleading.'" *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011); *see also Arrington v. Warden, GDCP*, 2017 WL 4079405, at *1 (S.D. Ga. Sept. 14, 2017) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 (11th Cir. 2014)) (same); Contra Fed. R. Civ. Proc. 8(a) (authorizing notice

51

pleading). This line of argument is a broad expansion of his original Ground for relief, which did not include any reference to the impact of the accumulation of alleged errors. See doc. 1 at 13. It would thus require amendment of his Petition to be properly before the Court. Cf. Huls v. Llabona, 437 F. App'x. 830, 832 n. 5 (11th Cir. 2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal); (citing *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (stating that "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.")).

"[A]ny claims added after the original petition must also be filed within the statute of limitations." *Rivera v. Humphrey*, 2017 WL 6035017, at *2 (S.D. Ga. Dec. 6, 2017). However, under Federal Rule of Civil Procedure 15(c), claims filed outside of the applicable time period "are timely filed for purposes of the statute of limitations if they 'relate back' to the original petition." *Id.* (citing *Mayle v. Felix*, 545 U.S. 644, 655 (2005)). A claim "relates back to the date of the original [petition] when: . . . (B) the amendment asserts a claim or defense that arose out of

the conduct, transaction, or occurrence set out–or attempted to be set out–in the original [petition]." Fed. R. Civ. P. 15(c)(1)(B); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) ("[T]he untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type."). Though Petitioner has made no argument in support of his constructive amendment, this claim clearly does not relate back as it is entirely distinct. Therefore, Petitioner's attempt to alter his grounds to include such a claim is improper.

In any event, it is unclear whether such a claim is cognizable in § 2254 cases in the Eleventh Circuit. *Compare Sims v. Singletary*, 155 F.3d 1297, 1314 (11th Cir. 1998) (considering but reversing district court's holding that alleged errors cumulatively resulted in prejudice during sentencing phase which mandated vacating his death sentence) with *Morris v. Sec'y, Dept. of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of the AEDPA can ever succeed in showing that the state court's

53

decision on the merits was contrary to or an unreasonable application of clearly established law.")

The Eleventh Circuit has instead avoided the determination of whether, under current Supreme Court precedent, cumulative error could ever succeed under AEDPA. *See Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) ("[W]e need not decide [whether a cumulative error claim would be cognizable in habeas corpus] here because, even assuming a claim of cumulative error is cognizable in federal habeas proceedings, [Petitioner] would not be able to satisfy that standard."); *Morris*, 677 F.3d at 1132 n.3 ("For our purposes, it is enough to say that Morris's cumulative error claim clearly fails in light of the absence of any individual errors to accumulate."). In those cases, where "there is no error in any of the trial court's rulings, the argument that cumulative trial error requires that this Court reverse the defendant's convictions is without merit.'" *Insignares v. Sec'y Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (quoting *United States v. Taylor,* 417 F.3d 1176, 1182 (11th Cir. 2005) (citations and quotations removed) (alterations in original).

Assuming this claim is cognizable, it fails for the reasons described herein.  Petitioner has failed to articulate any errors—constitutional or otherwise—which to accumulate.  *See Wood v. Sec'y, Dep't of Corr.*, 793 F. App'x 813, 818 (11th Cir. 2019); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009).  His reliance on solely state law to conclude a cumulative error claim is viable does not warrant federal relief in the Eleventh Circuit.  He has directed the Court to no binding precedent warranting federal relief for cumulative error where constitutional claims were not established.

For all of these reasons, Ground Two should be dismissed.

*C. Ground Three: Right to Proceed Pro Se on Appeal*

Petitioner's next argument is that he was deprived of the right to represent himself on appeal.  Doc. 1 at 14.  He claims that, beginning with his Motion for New Trial and extending through to his appeal, he requested both orally and in writing to represent himself.  He claims "not a single pleading from sentencing on was filed by counsel until he filed an unauthorized appellate brief." *Id.*  Presumably referencing the Motion for New Trial hearing, Petitioner claims he was not granted a *Faretta* hearing but was granted the right to represent himself anyway; however,

55

when he tried to speak, he was told he had counsel. *Id.* Then, the Court of Appeals "ignored" his objections and "imposed" Steven Beauvais and his brief on Petitioner, and then "allow[ed]" him to file a *pro se* supplemental brief. *Id.* at 14-15. He claims that his appeal was the "only one in Georgia history to be both *pro se* and with counsel." *Id.* at 15.

Petitioner did not raise this claim in his direct appeal, but it was raised in his state habeas corpus case as Ground Ten. *See* doc. 40 at 56. The state habeas court found that the Ground was procedurally defaulted, and that Petitioner failed to establish cause and actual prejudice to excuse the default. *Id.* at 57. As to cause, the state habeas court found that, since Petitioner was allowed to file a supplemental brief himself, the failure to raise the issue was entirely his own. *Id.* As to prejudice, the state habeas court found that, since he was allowed to represent himself on appeal by filing a supplemental brief containing enumerated errors which the appellate court actually considered, he could not show any harm. *Id.* at 58. Thus, the state habeas court held the claim was procedurally defaulted. The Respondent asks the Court to defer to the state habeas court's decision holding the claim was procedurally defaulted. Doc. 78-1 at 25. However, in such a

circumstance, deference is not at issue because it is not a decision on the merits, as contemplated by § 2254(d).   *Borden,* 646 F.3d at 813 (discussing what constitutes a procedural default versus a decision on the merits and noting that "a federal claimants procedural default precludes federal habeas review . . . if the last state court rendering a judgment in the case rests its judgment on the procedural default.") (quoting *Harris v. Reed,* 489 U.S. 255, 262 (1989) (citations omitted).

Nevertheless, a state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim.   *Judd,* 250 F.3d at 1313 (citing *Harmon,* 894 F.2d at 1270).   Yet, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon "independent and adequate" state ground.   *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991).   This is because "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."   *Williams,* 791 F.3d at 1273 (quoting *Cone v. Bell,* 556 U.S.

57

449, 465 (2009) (quotation marks omitted).  In these cases, federal courts are not confined to the state-court record.  *See, e.g., Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1249-50 & n. 9 (11th Cir. 2014).

The Eleventh Circuit has "established a three-part test to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision."  *Ward*, 592 F.3d at 1156-57 (quoting *Judd,* 250 F.3d at 1313).  "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim."  *Id.*  Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be adequate, *i.e.*, firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion."  *Id.*; *see also Lynd v. Terry*, 470 F.3d 1308, 1313 n.4 (11th Cir. 2006).

Georgia's procedural default rule has been firmly established and consistently followed for years.  *Black v. Hardin*, 336 S.E.2d 754, 755 (Ga. 1985) (holding defendant procedurally barred in habeas from raising "*any* alleged error or deficiency" not timely objected to at trial or raised on

appeal unless defendant can show cause and actual prejudice to overcome default, or miscarriage of justice would result if error not considered). Under that law, absent a showing of cause and prejudice or a miscarriage of justice, habeas corpus relief shall not be granted in connection with any claim not timely raised in accordance with Georgia procedural rules. O.C.G.A. § 9-14-48(d); O.C.G.A. § 9-14-40; *Chatman v. Mancill*, 626 S.E.2d 102, 105 (Ga. 2006) (holding claim procedurally defaulted and cannot be considered on merits if, as here, petitioner fails to raise it on direct appeal). The state habeas court's opinion that this ground was procedurally defaulted was also clearly and expressly stated. Thus, the state habeas decision employed an adequate state procedural ground to deny Petitioner's habeas claim. *See Ward*, 592 F.3d at 1175-76; O.C.G.A. § 9-14-48(d); *Lynd,* 470 F.3d at 1313-14 (concluding Georgia's procedural default rule, as stated in *Black v. Hardin,* provides adequate and independent state law ground for denial of claim).

The next question is easily answered here— whether the decision rested on an "independent" ground. A state court's finding is considered independent if it is separate and distinct from federal law. *Ake v. Oklahoma,* 470 U.S. 68, 75 (1985) ("[W]hen resolution of the state

59

procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded."); *Enterprise Irrigation Dist. v. Farmers Mut. Canal Co.*, 243 U.S. 157, 164 (1917) ("But where the non-Federal ground is so interwoven with the other as not to be an independent matter, or is not of sufficient breadth to sustain the judgment without any decision of the other, our jurisdiction is plain."). Given there is no federal constitutional right of self-representation in a state direct appeal of a criminal conviction, the state habeas court's consideration of this claim was necessarily independent of federal law. *Martinez v. Ct. of Appeal of California, Fourth App. Dist.*, 528 U.S. 152 (2000). Thus, given the state examined this issue under its more generous state law and still found it meritless, the Court here should likewise find it so. Ground Three should be denied.

### D. Ground Four: Ineffective Assistance of Appellate Counsel

Petitioner's next ground for relief alleges that he received ineffective assistance of appellate counsel. Doc. 1 at 16. He claims his appellate counsel did not thoroughly investigate the case because they both believed he was standby counsel only. *Id.* Petitioner again

complains of his appellate counsel's failure to adopt each of his proposed arguments and instead basing his appellate brief upon "less than ½ of what he had drafted," and making ineffective changes to his arguments. *Id.* He alleges that appellate counsel refused to perfect the record or ensure a complete appellate record. *Id.* Petitioner claims he was harmed by this because the materials related to representation were contained in the "supplemental" part of the record, which the Court understands to reference the missing pieces of the record. Appellate counsel allegedly refused to "interview any witnesses capable of supporting [his] claims," pursue "prosecutorial misconduct allegations," or "challenge the validity of searches or prior convictions or constitutionality of statutes." *Id.*

The state habeas court's analysis of this claim made extensive findings of fact. After reviewing Steven Beauvais' education and professional history, the state habeas court reviewed Beauvais' testimony regarding each tactical decision made with which Petitioner disagreed. *See* doc. 40 at 27-36. The state habeas court found that Petitioner had not shown that appellate counsel's performance was deficient under *Strickland. Id.* at 36. It found Beauvais had "marshalled all of the evidence and transcripts and reviewed them for potential issues; he met

with Petitioner a number of times and considered Petitioner's lengthy lists of potential issues; he met with trial counsel and obtained a copy of his file; and he ultimately raised the issues post-trial that he thought were most viable." *Id.* As a factual matter, the state habeas court found that Beauvais did not act as "standby counsel," as alleged by Petitioner, but instead Beauvais convinced (at Petitioner's behest) the trial judge to permit Petitioner to act as co-counsel. *Id.* The two acted together to subpoena witnesses and present evidence. Then, when Petitioner was unhappy with Beauvais' having not raised his various arguments on appeal, at Petitioner's behest, Beauvais asked the appellate court to allow him to withdraw, or, notably, to allow Petitioner to file his own supplemental brief. *Id.* at 37. According to the state habeas court, Beauvais never "obstruct[ed] or hinder[ed] Petitioner's ability to get the issues that Petitioner wanted raised before the appellate court." *Id.*

Petitioner has not even alleged that the state habeas court's interpretation of these facts was unreasonable. *See* doc. 1 at 16; 28 U.S.C. § 2254(d)(2). Moreover, the Court's own review indicates the interpretation is reasonable. Therefore, this Court must defer to the state habeas court's determination of the facts, which means the Court

62

presumes that the state habeas court's factual determinations are correct, because Petitioner has failed to present clear and convincing evidence to the contrary. *Pye*, 50 F.4th at 1035. In making these factual conclusions, the state habeas court also found that Petitioner had failed to show that Beauvais' performance was deficient. Doc. 40 at 36. Petitioner has likewise failed to argue, much less show, that the state habeas court's conclusion in this regard constituted an unreasonable application of law under § 2254(d)(1). *See* doc. 1 at 16.

The state habeas court also found that Petitioner had failed to show prejudice under *Strickland*, or that, "but for the alleged errors of appellate counsel, the result of the proceeding would have been different." Doc. 40 at 37. Petitioner's prejudice assertions before the state habeas court relied on documents which he claimed were lost or taken by the prison where he was housed, and he thus argued he was doubly harmed. *Id.* at 37-38. However, the state habeas court found, as a factual matter, that "virtually all of the public records that Petitioner had identified as being missing were provided to him in his federal civil rights case and admitted into evidence in this case." *Id.* Therefore, the state habeas court found his failure to show prejudice inexcusable. The

63

state habeas court found that "[m]uch of the information that Petitioner faults appellate counsel for not presenting would have been inadmissible any way," and otherwise, even if it was admissible, it "would not have established prejudice since it did not concern the sexual offenses themselves." *Id.* at 38. The state habeas court reviewed the potential evidence, finding that it was either inadmissible testimony about the veracity of the victim and therefore impermissible under Georgia law, hearsay, or simply irrelevant to the charges. *Id.* Therefore, the state habeas court found that Petitioner had not shown prejudice and denied his claim of ineffective assistance of appellate counsel.

Again, Petitioner has failed to argue that the state habeas court's interpretation of the facts was unreasonable or that its interpretation of the prejudice prong of *Strickland* was unreasonable. 28 U.S.C. § 2254(d). As in prior claims, the Court finds the state habeas court's application of *Strickland* and interpretation of the facts reasonable. Therefore, this Court affords deference to the state habeas court. Even when considering Ground Four without affording deference, however, the Court agrees that the Petitioner did not receive ineffective assistance of appellate counsel. Petitioner was not only well represented, but he was also given agency in

his appeal unlike most appellants, wherein he extensively litigated the arguments he believed were omitted from counsel's brief—the very deficiencies he seeks to prove herein. The claims of deficient performance were meritless on appeal and are meritless now. Thus, Petitioner cannot show prejudice under *Strickland*. Therefore, his Ground Four should be denied.

### E. Ground Five: Unconstitutional Enhancement of Sentence

In Ground Five, Petitioner argues that the sentences imposed against him for child molestation were enhanced by an unconstitutionally obtained conviction in Muscogee County, Alabama. Doc. 1 at 18. He explains that, in the Alabama case, he took an "Alford Plea" on December 3, 1987, after facts were misrepresented, he was coerced, and because he received ineffective assistance of counsel. *Id.* He further claims that he was denied the right to appeal in that case. *Id.* He then states that he did not assert this argument at trial because his trial counsel "insisted that no challenge to either the conviction or its use was possible," that the trial judge refused to consider his *pro se* challenges, and that appellate counsel refused to pursue it on Motion for New Trial or at appeal. *Id.* He explains that he asserted it at state

65

habeas, but the state had seized his evidentiary items which would prove he was innocent of the Muscogee County conviction. *Id.*

The state habeas court found that this claim was procedurally defaulted. Doc. 40 at 40. Moreover, it held Petitioner's allegations of deficient performance did not constitute cause to excuse the default because (1) the deficient performance of trial counsel claim was itself defaulted; (2) he had not shown that appellate counsel was deficient for failing to raise the issue, since appellate counsel did elect to challenge the Muscogee conviction—but on a different basis, *i.e.* the so-called *Apprendi* claim. *Id.* at 41-42. The state habeas court also found that Petitioner had failed to establish the requisite prejudice to overcome the default because the Muscogee conviction had not been set aside at the time of sentencing (nor has it ever been). *Id.* at 42.

As before, the state habeas court's procedural default holding precludes federal habeas review as long as it rested upon "independent and adequate" state grounds. *Judd*, 250 F.3d at 1313. Also as before, the procedural default holding is clearly adequate. *Black*, 366 S.E.2d at 755; O.C.G.A. § 9-14-48(d); *Lynd,* 470 F.3d at 1313-14. Furthermore, the state habeas court's consideration of the ineffective assistance claim was

sound and in line with federal law.[5]  If there was no ineffective assistance of trial or appellate counsel, Petitioner cannot show cause to excuse the procedural default by arguing ineffective assistance.  The Court herein has already found Petitioner's arguments regarding ineffective assistance baseless, *see* sections B and D, and therefore, he cannot use counsel's supposed deficiency to escape the procedural default.  Moreover, the Court agrees that Petitioner cannot show prejudice to excuse that default since his prior convictions were never shown to be, as he has argued, improper or not final, in any way.  His counselors did not pursue this strategy because it fails on its face, and thus Ground Five is unavailing. Ground Five should be dismissed.

### F. Ground Six: Fourth Amendment Violations in Prior Trial Led to Unconstitutional Conviction

Petitioner's next ground for relief argues that his convictions were obtained by use of evidence gained through an unconstitutional search and seizure occurring years before trial, and, consequently, an unconstitutional conviction in Alabama.  Doc. 1 at 20.  He claims that

---

[5] Though the Court relied upon *Turpin v. Todd*, 493 S.E.2d 900 (1997) to answer the "cause" question relevant to ineffective assistance, *Turpin* itself relies upon federal decisions for guidance.  *Turpin*, 493 S.E.2d at 825 ("Because the procedural default standards of § 9-14-48(d) are modeled on the federal standards, we look to federal decisions for guidance on this issue.")

"eight sexually explicit photographs, which were obtained on November 2, 1985 by Alabama authorities in an unconstitutional search and seizure, were used as 'wallpaper' throughout trial." *Id.* He then attacks the Alabama investigation and makes probable cause and Fourth Amendment allegations regarding the information leading to the search, the legality of the search, and the eventual failure to suppress the fruit of that search. *Id.* He suggests that the Alabama conviction was not finalized because Alabama law permits challenges to searches to follow guilty pleas, but since the Alabama court never conducted the hearing to challenge the search, and then the Georgia court ignored his efforts, he was harmed. *Id.* He claims the Georgia courts "ignored his efforts to challenge both the search and the conviction." *Id.* Finally, he claims the "Alabama record was claimed to include photos in testimony . . . in spite of record showing neither photos or any information about the individuals portrayed in them." *Id.* As explanation for why he has not exhausted this claim, Petitioner again blames the failure on his trial and appellate counselors. *Id.*

On this claim, which Petitioner pursued *pro se*, the Georgia Court of Appeals determined that "the entire argument" that the Alabama

68

search was illegal, and that consequently the validity of the search was still pending in Alabama, which meant the photos could not be used at trial, "lack[ed] a factual premise." *See Schwindler*, 563 S.E.2d at 162. The appellate court noted that Petitioner failed to make any citations to the record, but also that its own review revealed no facts to support the assertion that the matter was still a pending issue in Alabama. *Id.* The state habeas court found the Georgia Court of Appeals' decision binding but also pointed out that Petitioner's federal habeas corpus petition which challenged the Alabama conviction was unsuccessful. *See* doc. 40 at 45-46 (citing *Schwindler v. Blake, et al.*, No. 00-D-287-E (N.D. Ala. Dismissed June 29, 2000). Respondent argues that the claim is defaulted but simultaneously also urges this Court to find as the Georgia courts did.

Petitioner's argument indeed lacks a factual premise, but it also lacks any legal basis as well. A *collateral* attack on a final conviction does not itself render the record in that conviction sealed or preclude that conviction's record's use in future cases. *Cf. Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1238 (11th Cir. 2024) (Holding that the transfer of authority from the district court to the court of appeals does *not* rob the

district court's judgment of its effect while the appeal is pending). To hold differently would prevent state court criminal judgments from being final until the habeas review was complete. Such a scenario flies in the face of federalism, comity, and the Constitution's Full Faith and Credit Clause. U.S. Const. art. IV, § 1; 28 U.S.C.A. § 1738; Kremer v. Chem. Const. Corp., 456 U.S. 461, 481 (1982) ("[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.") The Court affords deference to the state courts on this claim. Therefore, it should be dismissed.

### G. Ground Seven: Due Process Violations Led to Unconstitutional Conviction

Petitioner's next Ground for relief asserts that the introduction of eight sexually explicit photos "before any testimony or arguments" violated his due process rights. Doc. 1 at 21. Petitioner's argument references the admission of photos from a prior Alabama conviction at his trial which depicted Petitioner involved in a sex act with his nephews. *See* doc. 40 at 46. The admissibility of that Alabama conviction as a similar transaction had already been established at the pretrial motions

hearing, which resulted in the photos' admission as well. *See id.* at 46-47. Petitioner claims these 8 photographs were "wallpapered" because they were projected on a large screen when the prosecutor began his opening statements. *See, e.g.*, doc. 122 at 10. Trial counsel objected on the basis that the photos had not been authenticated, and the prosecutor replied that he would have them authenticated during the trial. Doc. 40 at 47. Indeed, the prosecutor referred to the photographs in his opening statement as part of the similar transaction evidence the jury would hear, and the photos were later authenticated. *Id.* According to Petitioner, the prosecutor falsely claimed the photos were from the record in the Alabama conviction and proved possession of child pornography. Doc. 1 at 21.

By way of background, in Count Eight of the indictment, the state alleged that Petitioner possessed printed material which depicted a minor under the age of 18 engaging in sexually explicit conduct. Doc. 40 at 7; *see also Schwindler*, 563 S.E. 2d at 159. The state sought to use several photos—some were derived from the record in the Alabama conviction, and others had been found in Petitioner's possession—to prove this charge. Doc. 40 at 47-48. The pediatrician the state sought to

rely upon to determine the age of the male depicted in the photos from Petitioner's possession had a change of heart prior to trial and was unable to testify as to the age of the male depicted in the photos. Doc. 122-3 at 256; *see also id.* at 227-230. Thus, those photos found in Petitioner's possession were not admitted, doc. 40 at 47-48, and the trial court granted the defendant's motion for a directed verdict on the count, since the evidence was ruled inadmissible and the age of the people in the photographs could not be established. *Id.* Petitioner claims that, since the state had initially planned to use the admitted eight "wallpapered" photos derived from his prior conviction as evidence of Count Eight—a count on which that he ultimately received a directed verdict—their use was improper. Doc. 1 at 21-22.

Petitioner argued on appeal that he was denied due process by the state's use of the eight "wallpapered" photos because their use "so prejudiced the jury that Schwindler could never have received a fair trial under any circumstances." Doc. 122-2 at 22-23. In other words, the argument on appeal was that the pretrial and evidentiary rulings regarding these photos were erroneous. The Georgia Court of Appeals found that the photos, "which [Schwindler] admitted were accurate

72

photos of him engaging in the depicted behavior," were properly admitted as similar transaction evidence. *Schwindler*, 563 S.E.2d at 162. During his state habeas proceeding, Petitioner argued what he argues here, that the timing of their use was improper, and their use violated due process because the directed verdict on one failed claim meant their use was improper to support the others. The state habeas court found that his claim was procedurally defaulted, since the basis of the argument was entirely separate from his appellate argument. Doc. 40 at 46-48.

The Court's review of this claim is precluded by this adequate and independent state procedural ground. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) ("Since Henderson failed to properly exhaust these claims in the state courts, and now he is undeniably barred by firmly established and consistently applied state procedural rules from raising them, the claims are procedurally defaulted, and our review is precluded by this adequate and independent state procedural ground."). Indeed, the argument presented to the appellate court was different from the one asserted at state habeas and the one asserted here. As before, the procedural default rule is adequate, and the issue involved is also

73

independent given it is clearly based on a state evidentiary law regarding similar transactions.  Thus, Ground Seven should be dismissed.

### H. *Ground Eight: Prior Convictions' Impact on Sentence was Unconstitutional*

Petitioner's Ground Eight states, "[s]entences imposed for child molestation (Counts 1-3) are based upon an unconstitutional statute/process which withholds necessary element from consideration by jury."  Doc. 1 at 23.  The thrust of Petitioner's argument is that the jury is unable to consider the "credibility or weight" of prior convictions, despite their use in obtaining the conviction and enhanced sentencing.  *Id.*  Again, Petitioner seeks to discredit or diminish the impact of his Alabama conviction where he entered an "Alford Plea."  *Id.*  Petitioner again blames his failure to exhaust this claim on the ineffective assistance of trial and appellate counsel.

Respondent argues that the Georgia Court of Appeals found this claim lacked merit and asks the Court to afford deference to that decision.  Doc. 78-1 at 34.  Indeed, the appellate court reviewed Petitioner's *Apprendi* claim on direct appeal.  *Schwindler*, 563 S.E.2d at 165 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

74

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.")).  On appeal, Petitioner contended the trial court erred in not requiring the State to prove his prior convictions beyond a reasonable doubt in order to have him sentenced as a recidivist under O.C.G.A. § 17–10–7.  Doc. 122-2 at 35-36.  The Georgia Court of Appeals rightly found that the exception in the *Apprendi* rule, which by its clear terms exempts prior convictions from having to be proved to a jury, meant Petitioner's claim failed.  *Schwindler*, 563 S.E.2d at 165.  The Court agrees with this holding, but it also notes that Petitioner's present argument does not involve *Apprendi* but rather argues the statute he was sentenced under is unconstitutional.  Doc. 1 at 23.  To the extent Petitioner has sought to bring the *Apprendi* claim using unexacting terms, the claim fails as this Court affords deference to the state appellate court.  Its holding was not unreasonable; the rule itself designates the exception applicable here.  *Apprendi*, 530 U.S. at 466.  However, to the extent his attempt constitutes a new argument altogether, the Ground is procedurally defaulted.  Petitioner never exhausted the claim, which would have required "raising both the factual and legal premises of the claims for relief that are now being asserted in

75

the federal habeas proceeding." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (quoting *Henderson,* 353 F.3d at 898 n. 25).   Petitioner's arguments regarding cause to excuse the default again fail because he has not shown ineffective assistance of counsel.  In any event, he has not even argued prejudice.  Ground Eight should be dismissed.

### I. Ground Nine: Brady Violations

Petitioner next argues that evidence obtained since his Motion for New Trial proceedings establishes that the "[s]tate withheld significant amounts of favorable evidence, before during and after trial."  Doc. 1 at 25.  What follows is a laundry list of purported hidden information, usually about the victim and his family's past or other individuals' wrongdoings.   *See, e.g., id.* (discussing "details of major drug investigations which implicated victim and provided motive to lie;" Bazemore's ineffective assistance and various statistics about his performance; Elizabeth Colson-Arbogast's perjury, fraudulent teacher's certification, and various behavior; and claiming Greg McConnell "provided motive for state witnesses to commit perjury.")  Petitioner again blames the lack of exhaustion of this claim on his attorneys' ineffectiveness.  Doc. 1 at 26.  He also claims that the failure was due to

76

the various courts refusing to either consider the claims or omissions in the record. *Id.*

The state habeas court characterized this ground as a *Brady* claim and ruled that it was procedurally defaulted. Doc. 40 at 49-55 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). It further held that Petitioner could not show cause and prejudice to excuse the default. First, as to cause, the state habeas court relied upon *Turpin v. Todd*, where the Georgia Supreme Court declined to hold that the State's purported concealment of the factual basis of a claim would always constitute cause. Doc. 40 at 49 (citing *Turpin*, 493 S.E. 2d at 906). Next, it noted that the parameters of the prejudice analysis to overcome the default of a *Brady* claim are coextensive with *Brady* itself. When it examined prejudice, and by default, *Brady* itself, it found Petitioner's claim failed.

Though Section 2254 does not require the Court to accord deference to the state court findings of no cause and no prejudice, the Court finds no fault in the state habeas court's analysis. *Crowe v. Head*, 356 F. Supp. 2d 1339, 1350 (N.D. Ga. 2005). Moreover, the procedural default finding represents an adequate and independent state procedural ground, especially because the state habeas court's review of the *Brady* issue was

77

slightly atypical. Specifically, the state habeas court did not discuss at length the elements required to prove a *Brady* claim. *See, e.g., Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1054 (11th Cir. 2017) ("To establish a *Brady* violation, a defendant must prove three essential elements: (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant.") (citations omitted). Instead, in finding no prejudice, the state habeas court held that Petitioner's assertions of instances of *Brady* violations were factually unsupported, and thus he could not show that knowledge of the supposed violations would have altered his trial or sentence. *See* doc. 40 at 51-55.

For example, the state habeas court noted that Roger Brantley, who Petitioner sought to discredit, did not testify at Petitioner's trial and thus, there was no testimony of his to impeach. *See* doc. 40 at 53. It also held that, as a factual matter, affidavits Petitioner sought to rely upon to prove his *Brady* claim did not exist. *Id.* at 54-55. The state habeas court also found that, even if the evidence did exist, it would not establish a

*Brady* violation because most of the evidence would not have been useful or because Petitioner clearly already knew about it, since he had been arguing about it the entire time. *Id.* at 53 (observing that information about pending criminal investigations involving the victim's family and others who lived at his home could not have been used to cross-examine the victim and therefore the trial court's ruling barring the line of questioning was proper); *see also id.* at 55 ("The purported affidavits would not show that the prosecutor allegedly presented perjured testimony from the victim . . . .").

The Court finds the state habeas court's cause and prejudice analysis was correct, and since it was based on its interpretation of facts, Petitioner's failure to show the factual interpretation was unreasonable is fatal to his claim. A review of the record indicates that Petitioner's grounds are without merit. Moreover, Petitioner has not asserted any cause and prejudice arguments herein which are worthy of excusing his procedural default. Like the other claims, his cause arguments fail because he cannot show ineffective assistance. His prejudice arguments fail for the exact reasons the state habeas court noted—they are factually unsupported. Ground Nine should be dismissed.

*J. Ground Ten: Unconstitutional Sentencing Statute*

Petitioner's next Ground claims that "[s]entences imposed for aggravated child molestation (Counts 4-5) [were] based upon an unconstitutional statute in which the lesser included offense potentially receives a greater punishment." Doc. 1 at 27. Petitioner claims that child molestation, which he describes as "the lesser included offense" in the statute, can be punished by a life sentence while the maximum punishment in the statute for what he calls "the greater offense" of aggravated child molestation is 30 years. *Id.*

The state habeas court found this ground was defaulted under O.C.G.A. § 9-14-48(d). *See* doc. 40 at 42-44. The state habeas court noted that "Georgia law requires that constitutional challenges to criminal statutes be raised at the first opportunity, and after trial is too late. *Id.* at 43 (citing *Kolokouris v. State*, 523 S.E.2d 311 (Ga. 1999). Further, it found that Petitioner could not show cause because he could not show trial counsel was ineffective. *Id.* However, it also found Petitioner's cause argument that his trial counsel was ineffective was, in itself, defaulted at that time, since Petitioner had not made an ineffective assistance claim based on trial counsel's failure to assert this argument.

80

*Id.* Likewise, Petitioner could not show cause in the form of appellate counsel ineffectiveness because, though he asserted other attacks on the propriety of the sentences, "appellate counsel saw no basis on which to have alleged that the statute was unconstitutional." *Id.* The state habeas court found that Petitioner also could not show prejudice because the sentence he received was enlarged because he was a recidivist and not because of some unconstitutional scheme. *Id.* at 44. Moreover, because the prosecution had complied with state law and given required notice prior to seeking the sentence enlargement, the sentence was proper. *Id.*

The state habeas court's procedural default ruling was adequate and independent, and its holding regarding cause and prejudice involved state law statutory matters which are not the purview of this court which sits in federal habeas review. Petitioner procedurally defaulted the claim in state court, and its basis lies solely in state law and thus there is no federal issue implicated. Therefore, Petitioner's Ground Ten should be dismissed.

*K. Ground Eleven: Obstruction by the State*

Petitioner's Ground Eleven claims that "agents of the state have engaged in direct obstruction of efforts to challenge conviction." Doc. 1 at 28. He further elaborates that his legal materials have been repeatedly disrupted by the prison's removal of staples, shuffling papers/files, etc. *Id.* He claims that the district attorney sent an investigator named "Edenfield," based on his trial counsel's belief that Petitioner was interfering with trial counsel's other client, Robbie Garvin. *Id.* He then outlines several more claims against the state's attempts to "force disposal" of his materials since he was imprisoned. *Id.* at 28-29. In his supplemental brief, Petitioner, through counsel, attempts to alter this Ground somewhat. He claims that, because Petitioner has not been afforded a full transcript, he has not been afforded due process. Doc. 122 at 13-14.

Respondent argues that, apart from his claim about the appellate record being incomplete, which was raised and decided adversely to Petitioner on direct appeal, the remainder of Ground Eleven fails to state a claim for relief. Doc. 78-1 at 39-40. Respondent explains that none of these claims allege a violation of a federal constitutional right in the proceedings giving rise to the criminal convictions but instead assert

allegations whose proper forum would be a civil rights action under § 1983. *Id.* at 40. Though Petitioner's supplemental brief was filed after the Respondent's Answer/Response, Petitioner has not responded to Respondent's argument regarding the forum for these allegations. *See generally* doc. 122.

Respondent also points out that Petitioner filed a civil rights case against the GDC and its commissioner in 2011. Doc. 78-1 at 40. In that case, Petitioner claimed, as he does here, that the GDC was actively obstructing his access to courts by depriving him of legal files and materials without due process. *See Schwindler v. Dozier*, No. 1:11-CV-1276-TCB, doc. 1 (N.D. Ga. April 19, 2011). The Northern District of Georgia granted summary judgment to the GDC, *id.*, doc. 122, but was reversed on appeal, *id.* doc. 148. Thereafter, in 2022, Petitioner, through counsel, claimed that he and the GDC reached settlement in that case, and he requested dismissal. *Id.*, doc. 185. Petitioner sought to vacate the dismissal after he claimed the GDC decreased his access to the information and after Respondent provided Petitioner with a thumb drive containing copies of records, which he claimed he was unable to use on account of arbitrary jail policies and insufficient equipment. *See* doc.

98; *see also Schwindler*, 1:11-CV-1276, doc. 185 at 11-19.  The Northern District denied his request to vacate.  *See id.*, doc. 189.  The Eleventh Circuit then affirmed.[6]  *Id.*, doc. 203.

Except for the argument regarding the appellate record being incomplete, this claim appears to have been fully argued in the separate federal case, which Petitioner dismissed with prejudice, and the Northern District denied post-judgment relief.  *Schwindler*, 1:11-CV-1276, doc. 184.  Given this Petition was filed before the conclusion of the civil rights action, it is unclear whether Petitioner seeks to assert claims based on the same facts he alleged in that case.  To the extent Petitioner seeks to rehash the same events alleged in his Northern District case, the Court is barred from granting relief on this claim by *res judicata*.  "It is by now hornbook law that the doctrine of res judicata 'bars the filing of claims which were raised or could have been raised in an earlier proceeding.'"  *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th

---

[6] The Eleventh Circuit found that the parties' settlement negotiations began with Petitioner's counsel offering to dismiss the case in exchange for legal documents and increased law library access, but that the defendant in that case declined.  *See Schwindler*, 1:11-CV-1276, doc 203 (11th Cir. Aug. 6, 2024).  The defendant countered, offering that, if Schwindler dismissed his lawsuit with prejudice, the Commissioner would not seek an award of costs.  *Id.*  Schwindler's counsel accepted on his behalf and thereafter filed the notice of voluntary dismissal.  The Court also found there was never a settlement agreement which the Commissioner breached.

Cir. 2011) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)).  For *res judicata* to bar a subsequent case, four elements must be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale*, 193 F.3d at 1238.  Each of these elements are met here.

Though Petitioner appears to continue to seek relief on this access to courts claim, his opportunity to do so has passed unless he can substantiate some new cause of action—and if he seeks to do so, he must, as before, pursue that via a § 1983 case.  An inmate convicted and sentenced under state law may seek federal relief under two primary avenues: "a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983." *Hill v. McDonough*, 547 U.S. 573, 578 (2006).  These avenues are mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action.  *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006).  The line of demarcation between a § 1983 civil rights action and

85

a § 2254 habeas claim is based on the effect of the claim on the inmate's conviction and/or sentence. When an inmate challenges the "circumstances of his confinement" but not the validity of his conviction and/or sentence, then the claim is properly raised in a civil rights action under § 1983. *Hill,* 547 U.S. at 579. However, when an inmate raises any challenge to the "lawfulness of confinement or [the] particulars affecting its duration," his claim falls solely within "the province of habeas corpus" under § 2254. *Id.* Petitioner's allegation clearly seeks relief under § 1983 and is thus improperly asserted in this § 2254 action, even if it seeks a separate or new access to courts claim. To the extent he wishes to seek a new access to court claim based upon more recent facts, such as the alleged revocation of computer time, he must bring a separate § 1983 case.

Furthermore, his counsel's attempt to recast his § 1983 claim as a due process claim which could theoretically lead to relief in a habeas instance is impermissible under Rule 2(c) of the Rules Governing Habeas Petitions, given it is an inherently different claim than what he asserted in his original Petition. *McFarland*, 512 U.S. at 856. As noted herein already, habeas petitions must contain "'fact pleading' as opposed to

'notice pleading.'" *Borden*, 646 F.3d at 810.  Petitioners may not expand their claims at briefing to reflect an entirely different claim than what was presented in their Petition without proper amendment and meeting factual pleading standards therein.  To the extent Petitioner seeks to constructively amend his Petition by recasting his claim, the attempt is clearly untimely.

Finally, regarding his argument about the appellate record being incomplete, which was raised and decided adversely to Petitioner on direct appeal, the Court affords deference to the direct appeal decision. *Schwindler*, 563 S.E.2d at 166 ("Schwindler complains that the trial court failed to supplement the appellate record with certain pleadings.  The court found that the missing pleadings were immaterial.  As Schwindler has failed to demonstrate that the pleadings are essential to the disposition of his appeal, we discern no error.")  For all these reasons, Ground Eleven should be dismissed.

### L. Ground Twelve: Fourth Amendment

Petitioner's Ground Twelve asserts that his convictions were obtained using evidence gained through illegal searches and seizures on February 8, 1999, and February 22, 1999.  Doc. 1 at 31.  In this Ground,

87

Petitioner attacks the validity of the warrant used to search and seize his property. *Id.* A review of the specific facts underlying this ground is crucial to the Court's review. Petitioner asserts that no probable cause existed for issuance of the warrants for the following reasons:

(i) "The state knew that Timothy Brantley would not be at the residence due to its ongoing aerial reconnaissance of the ship and island in South Carolina, and its counter-narcotics surveillance of the 37 Montomery [sic] Street and 244 Kensington Drive (Brantley residence) in Savannah."

(ii) The warrant was based upon hearsay, which was both 2, 3, and 4 times removed as well as excessively stale [because]:

    a. Tom Anderson—the principal source—had not been in any way associated with the ship, island, foundation, or parties (Brantley or Schwindlers) since June 1998—8 months prior.

    b. Megan Littlejohn had not been in the Savannah location since early December of 1998—nor had she had any contact of any sort with Brantley since mid-November of 1998—more than 3 months prior. Moreover, Brantley testified that he had never related any information to her because he could not stand her.

    c. Paul Clarke's last contact with the school, Brantley or Schwindler was in October of 1998—at which time he attempted to have Joshua Brantley (Timothy's older Brother) arrested for having shot him in the forehead with a pellet gun in retaliation for Clarke

having taken numerous shots at Brantley with a pellet rifle he had smuggled onto the island.

d. Kathy Cahoon's last contact with Brantley directly had been in October of 1998. She had prohibited her sons from associating with him after she discovered Brantley's roommate at home was a homosexual female impersonator, Jason Taylor. She had a personal motive for wanting the foundation and ship program closed due to her husband Peter's extensive financial support—which she openly opposed.

e. Cody Cahoon was the only "informant" to have even seen Timothy Brantley in less than 2 months prior to the search, and he specifically rejected the claim that Timothey Brantley was being molested based upon his eyewitness observations and direct conversations on precisely that topic with Brantley on at least three occasions.

(iii) The warrants themselves were not sufficiently specific [for the

following reasons]:

a. All computers, records, and papers is not a specific item.

b. Timothy Brantley could not reasonably be expected to be in these.

c. A pornographic video, Vaseline, etc. are equally vague especially given no allegation by Brantley related to these items.

(iv) No detailed or specific inventory was ever produced:

a. The state seized personal correspondence, legal files, medical records, business records, personal photographs, computers, every videotape in sight, every surfboard it could find, ship's logs, captains travel satchels . . . so much that a van was needed to transport it . . .yet no complete or even marginally reasonable inventory was provided.

89

> b. So many electronic files were seized that they exceeded the F.B.I.'s ability to process them.

Doc. 1 at 31-32.    In summary, each of these allegations seeks to undermine the evidence used to support the validity of the warrant and are not relevant the execution of that warrant.    Petitioner brought this set of claims on appeal and argues he asserted it at state habeas within his "Motion to Preserve Evidence" filed in Chatham County Superior Court.    *See id.* at 32.

Petitioner later argued through counsel that his Fourth Amendment rights were violated when evidence obtained from a Styrofoam cooler during the search was used to obtain his conviction. Doc. 122 at 7-8.    He argues that law enforcement exceeded the authority of the warrant when it searched under Petitioner's bed and retrieved and opened the cooler despite it not being listed in the warrant, and despite "general correspondence" not being listed on the warrant. *Id.* The letters' use at trial to show Petitioner's "lustful disposition" was therefore, according to counsel, unconstitutional. *Id.* This claim was argued before the Georgia Court of Appeals, and as explained above, its decision on this line of arguments was later reversed by the Georgia Supreme Court in *George,* 865 S.E.2d at 131 ("We therefore conclude that the Court of

90

Appeals' decision in *Walsh* is one of a line of that court's cases [which includes *Schwindler*] that failed to apply the correct plain view standard to evidence seized outside the scope of a warrant."). In *George*, the Georgia Supreme Court did not address arguments related to the sufficiency of the warrant but only addressed issues with the execution of warrants. *See generally id.* However, Petitioner (through counsel) now argues that, because the Georgia Supreme Court later overruled the appellate court's finding on the Fourth Amendment claim, his Fourth Amendment claim is rendered apparent and worthy of relief. Doc. 122 at 7-10.

Respondent argues that "these Fourth Amendment claims, which were decided adversely to Petitioner on direct appeal, are precluded from review under *Stone v. Powell*, 428 U.S. 465 (1976), as he had a full and fair opportunity to litigate them in the state courts." Doc. 78-1 at 40-41. Indeed, in order to review Petitioner's Fourth Amendment claim, the Court must conclude that he did not have a full and fair opportunity to litigate his claim in a state court proceeding. *See Stone,* 428 U.S. 465. *Stone* instructs that:

> where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may

> not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

*Id.* at 494-95 (footnotes omitted).  Furthermore,

> For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.   Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims.

*Tukes v. Dugger,* 911 F.2d 508, 513-14 (11th Cir. 1990) (quoting *Morgan v. Estelle,* 588 F.2d 934, 941 (5th Cir.1979)); *see also Hedden v. Wainwright,* 558 F.2d 784, 786 (5th Cir. 1977).  In *Stone*, the Supreme Court explained, "the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." 428 U.S. at 490.  The Court noted, [t]he primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights." *Id.* at 486.  The evidence obtained is reliable, and the deterrent effect of suppressing the

92

evidence, according to the Supreme Court, is "outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." 428 U.S. at 494. In other words, even if Petitioner shows that the evidence should not have been admitted at trial under the exclusionary rule, he will not obtain habeas relief on a Fourth Amendment claim as long as the state courts fully and fairly considered his claim.

Before it reaches the arguments, the Court must again address Petitioner's improper attempt to broaden his grounds beyond that which was pleaded. Thus, the Ground must be divided into two separate claims. First, the claims as asserted in the Petition, which seek relief based on allegations that the warrant was insufficient or was *illegally obtained* are those properly before the Court. Second, the claim asserted in the supplemental briefing, which asserts that the warrant was *executed* in an unconstitutional manner, is improperly before the Court.

Respondent does not identify the so-called "full and fair consideration" of the Fourth Amendment claim in the record, except to argue that Petitioner's claims were decided adversely on appeal. *See* doc. 78-1 at 40-41. However, a review of the Georgia Court of Appeals'

consideration of the sufficiency of the warrant argument shows that the claims are barred by *Stone*, and even if they were not, they would fail for the same reasons discussed by the appellate court. The appellate court considered Petitioner's arguments that "the affidavit supporting the first warrant was insufficient to provide probable cause." *Schwindler*, 563 S.E.2d at 159. The Court reviewed the "ten-page detailed affidavit underlying the first warrant," which "reflected that the testifying officer met with numerous people about possible allegations of molestation by Schwindler." *Id.* It then reviewed everything contained within the affidavit, including how it recounted the officers' conversations with Cody Cahoon, Megan Littlejohn, Tom Anderson, as well as other aspects of the officer's investigation. It found that the trial court's probable cause determination—that the affidavit indicated that tangible evidence of the crimes of child molestation and violating the compulsory school attendance laws would be found at the apartment—was not in error. It held that the

> underlying affidavits provided the lower court with ample, reliable evidence to find probable cause for the searches. Much of the information was firsthand, the informants were identified and shown to be reliable, their statements were corroborated by others and by police observations, and the

94

items were described with sufficient particularity. *Schwindler*, 563 S.E.2d at 160.

The Court agrees with the Respondent; the Georgia Court of Appeals fully and fairly considered Petitioner's arguments relevant to the affidavit supporting the warrant. Under *Stone*, even if the Court disagreed with the appellate court's holding, it would not grant relief to Petitioner. However, in directly reviewing Petitioner's arguments, the Court also finds his Ground Twelve meritless.

Next, Petitioner's supplemental argument—which was not asserted in the Petition—fails because, as before, Petitioner may not constructively amend his Petition at this late hour to include claims not alleged originally unless they relate back. *Davenport*, 217 F.3d at 1344. Even though Petitioner's supplemental briefing is well supported, and even though Petitioner's supplemental claim appears to have been decided wrongly during his direct appeal according to the Georgia Supreme Court, he did not argue it in his Petition. His Petition focuses only upon the probable cause in obtaining the warrant, and it does not mention the execution of the warrant, or the "plain view" theory which had been asserted by appellate counsel, whatsoever. Doc. 1 at 31-32.

95

Petitioner's amendment does not, therefore, relate back to his original petition, and consequently, even if he sought amendment, it would be untimely under Rule 15(c).    Ground Twelve should therefore be dismissed.

M. *Ground Thirteen: Improper Trial Court Jurisdiction and Venue*

Petitioner next argues that jurisdiction and venue in Chatham County was improper with respect to counts 1, 2, 4, 5, 7, and 9 of the indictment.  Doc. 1 at 33.  He argues that the ship BARBA NEGRA was "at all times a Canadian documented and flagged vessel" and was therefore not under the Court or the state's jurisdiction.  *Id.*  Next, he argues that the ship FRIDHEM was a Swedish documented and flagged vessel moored at an island in South Carolina, and also not under the state's jurisdiction.  The ship HMS BOUNTY, he argues, was operated in the territorial waters of South Carolina and Florida at all times during the period set forth in the indictment.  *Id.*  Next, he reasons that, because the Fridhem school operated solely in the state of South Carolina or onboard the vessels FRIDHEM or HMS BOUNTY, the trial court did not have jurisdiction.    *Id.*    He claims that the school's records were maintained onboard the ship FRIDHEM in onboard computers.  *Id.*  He

claims that the victim, Timothy Brantley "never attended any classes conducted by Elizabeth Colson-Arbogast at any location." *Id.* Finally, he argues that the Fridhem school was "operated by the parents of the students as a home school association in the state of South Carolina," and that Peter Cahoon was the foundation's chairman and Kathy Cahoon was the secretary/treasurer. *Id.*

The Georgia Court of Appeals considered this Ground in combination with a related claim that Petitioner asserted relevant to school reporting violations. *Schwindler*, 563 S.E.2d at 161. The appellate court determined that all of these arguments lacked merit because, contrary to Petitioner's view of facts, the unincorporated and unregistered school (a) kept its records in Petitioner's apartment in Chatham County, (b) conducted a class in that apartment, and (c) provided transportation to the school from that apartment.[7] *Id.* The appellate court also found that "there was no evidence at trial of a foreign

---

[7] As to the reporting violation, the appellate court also noted that O.C.G.A. § 20–2–690(b)(5) requires all administrators of private schools (regardless of location) which teach a student who resides in a Georgia public school district to report that student's attendance to the school superintendent of the public school district. As Petitioner failed to report the attendance of Timothy Brantley and other Chatham County residents to that district's superintendent, venue and jurisdiction were appropriate in Chatham County. *Schwindler*, 563 S.E.2d at 161.

97

registry of the boat." *Id.* at 161-62.  The Court found the claim lacked a factual basis in the record, since the first mention of its possible foreign registry was in an unauthenticated hearsay letter which was introduced at the motion for new trial hearing that only implied that the vessel may at one time have had a Canadian registry.  The appellate court noted that the evidence was untimely, and hearsay evidence lacks probative value. *Id.* n. 1.

Respondent argues that since this assertion raises no federal question, it fails to state a claim for relief.  Doc. 78-1 at 41.  Indeed, § 2254(d)(1) requires the Court to afford deference to the state court unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  However, given the inquiry is again fact-dependent, pertinent here is that § 2254(d)(2) requires this Court to defer to the state appellate court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Petitioner's bare allegations fail to show that the state court's interpretation of the facts was unreasonable.  This Court must therefore

accept the state court's determination that this claim was factually unsupported. Consequently, the Court need not veer into the question of whether the Chatham County Superior Court has territorial jurisdiction or venue over waters which Petitioner argues belong to South Carolina, and further, whether that presents a constitutional or federal question, or even whether Petitioner has standing to bring such a claim for relief at all. Because the Court defers to the Georgia Court of Appeals' conclusion that the facts underpinning Ground Thirteen were unsupported by the record, Ground Thirteen should be dismissed.

*N. Ground Fourteen: Due Process*

Petitioner next argues that he was denied due process of law by the trial court's erroneous evidentiary rulings. Doc. 1 at 34. The specific evidentiary rulings he disputes include: (i) the court admitted unauthenticated photos from his prior Alabama criminal case; (ii) the court allowed the state to introduce "irrelevant" character evidence about Petitioner's adopted son; (iii) the court admitted his Alabama conviction(s) as similar transactions despite their dissimilarity, including a misdemeanor child molestation involving a four year girl even though the present charge involved a teenage boy, as well as one involving a "14

year old 'Alford Plea'" which was based on an "unconstitutional search;" (iv) the court admitted child hearsay statements made to Megan Littlejohn; (v) the court would not allow the defense to introduce evidence of "drug activity" and "sexual misconduct" around the victim's family; and (vi) the court would not admit evidence about Elizabeth Colson-Arbogast. *Id.* at 35-36.

Petitioner raised most of these attacks during his direct appeal. He did not argue that the court did not allow his defense regarding the victim's drug activity and sexual misconduct or the Elizabeth Colson-Arbogast evidence, though. See doc. 122-2 at 20-26; As discussed herein, the appellate court found no error and held that the admission of the photos "showing oral sodomy on other young boys, which he admitted were accurate," were properly admitted; the argument related to his adopted son was not preserved; the Alabama convictions were properly admitted, including as similar transaction evidence; and the child hearsay statements to Megan Littlejohn were properly admitted. *Schwindler*, 563 S.E.2d at 162. Petitioner has not argued that the appellate court's application of federal law was unreasonable, and he likely could not. The appellate court's decision on the evidentiary issues

was entirely grounded in state law. Petitioner's attempt to root this claim in a due process theory is not developed whatsoever. Doc. 1 at 35 (stating Petitioner was "denied due process of law by the trial courts erroneous evidentiary rulings.") Therefore, the Court must afford deference to the state appellate court's decision on this issue. *See Schwindler*, 563 S.E.2d at 162. As argued by the Respondent, "[w]hile the due process clause guarantees a fundamentally fair trial, that clause does not establish the United States Supreme Court as 'a rulemaking organ for the promulgation of state rules of criminal procedure.'" Doc. 78-1 at 44 (quoting *Estelle*, 502 U.S. at 70) (citations and quotation marks omitted). This Court does not sit in direct review of the state court's evidentiary rulings but instead is tasked with determining whether the state appellate court's (the last court to render a decision on the merits of this claim) adjudication of this Ground resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner's failure to articulate any due process argument while relying on his conclusory complaints about trial court evidentiary decisions renders his Ground Fourteen meritless.

101

The other two arguments Petitioner makes regarding the victim's behavior and Colson-Arbogast are procedurally defaulted because he has raised them here for the first time.  In order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *See Castille,* 489 U.S. at 351 (quotation marks and citation omitted). Furthermore, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Snowden,* 135 F.3d at 736.  Similarly, and as Respondent has argued, the state courts would find any attempt to raise a second state collateral claim successive. *Chambers v. Thompson*, 150 F.3d 1324 (11th Cir. 1998). Accordingly, since these claims were unexhausted, and would be deemed to be procedurally barred in the state court due to their default, they should be dismissed.  Ground Fourteen should be dismissed.

*O. Ground Fifteen: Right to Cross-Examine Witnesses*

Petitioner's final argument is that he was denied the right to thoroughly cross-examine witnesses.  Doc. 1 at 37.  Petitioner states he

102

sought to cross examine witnesses about: (i) the victim's "alternative motives" to lie; (ii) a DFACS report; (iii) polygraph responses obtained by the state from his son; (iv) the initial internal conversations regarding Timothy Brantley's first accusations of molestation; and (v) purported pending drug prosecutions against Roger Brantley, Joshua Brantley and Jason Taylor though they were "unavailable" for trial. *Id.*

Respondent argues that some of these claims were decided by the state appellate court and the others are new and thus barred. Doc. 78-1 at 45. Indeed, on the general allegation regarding the victim's alternative motives, the Georgia Court of Appeals found no error. It held that the trial court properly declined to permit Petitioner to cross-examine the victim about his other motives. *Schwindler*, 563 S.E.2d at 163 ("The propensity for such tenuous evidence to be used as a means of simply impugning the character of the victim caused the trial court to conclude that the prejudice of admitting the evidence outweighed any possible relevance.") As in the prior Ground, the Georgia Court of Appeals did not unreasonably apply any federal law in this imminently reasonable decision on state evidentiary concerns. The Court should afford deference on this holding. *Delaware v. Van Arsdale*, 475 U.S. 673, 679

103

(1986) (holding that trial courts have "wide latitude" to impose reasonable limits on cross-examination.)

Regarding the desired cross-examinations on the polygraph tests and the drug prosecutions against the victim's family members and other witnesses, this claim is raised for the first time and is unexhausted, and consequently procedurally defaulted. *Snowden,* 135 F.3d at 736. Ground Fifteen should be dismissed.

## IV.   Conclusion

For all the foregoing reasons, it is **RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 1, be **DENIED**. Additionally, applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either.  28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added). This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED** this 30th day of January, 2026.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA