# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

FRANK JOSEPH SCHWINDLER, )
)
    Petitioner, )
)
v. )          CV 416-189
)
P.O. AHMED HOLT, )
)
    Respondent. )

## <u>ORDER</u>

Before the Court is the Magistrate Judge's January 30, 2026 Report and Recommendation, doc. 126, to which Petitioner Frank Schwindler has objected, doc. 129. After a careful *de novo* review, the Court agrees with the Magistrate Judge's recommendation. For the reasons explained below, Petitioner's objections are **OVERRULED**. Doc. 129. The Court **ADOPTS** the Report and Recommendation, doc. 126, as its opinion and **DISMISSES** Petitioner's Petition for Writ of Habeas Corpus, doc. 1.

## BACKGROUND

Petitioner Frank Schwindler filed his Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 25, 2016, seeking relief from his

2000 conviction and sentencing by the Superior Court of Chatham County, Georgia, for child molestation, aggravated child molestation, enticing a child for indecent purposes, and failing to report school attendance. *See generally* Doc. 1; *see also* Doc. 40 at 7-9. His Petition seeks relief on 15 Grounds:

> (1)    Petitioner was denied the right to counsel when the trial court forced him to choose between hostile counsel with a conflict of interest or self-representation without access to law;

> (2)    Petitioner was denied effective assistance of trial counsel in that trial counsel refused to investigate his case, perjured himself when he testified he had interviewed witnesses, lacked knowledge of law regarding his prior Alabama conviction, forced Petitioner to testify, refused to prepare him for trial, had a conflict of interest, did not know facts of the case, would not believe Petitioner, and falsely believed that photos which had been seized in his Alabama case had been admitted as evidence when they had not;

> (3)    Petitioner was deprived of his right to represent himself on appeal;

> (4)    Petitioner received ineffective assistance of "imposed" appellate counsel;

> (5)    Petitioner received sentences for child molestation (Counts 1-3) which were enhanced by unconstitutionally obtained convictions in Muscogee County, Alabama;

> (6)    Petitioner was convicted by use of evidence gained through the unconstitutional search and seizure, which resulted in eight sexually explicit photographs that had been obtained in the investigation leading to his Alabama conviction and used to "wallpaper" the courtroom in the currently disputed conviction;

(7)    Petitioner was denied due process because those eight sexually explicit photos were displayed before any testimony or arguments had been made;

(8)    Sentences were imposed which were based upon an unconstitutional statute/process which withholds a necessary element from consideration by the jury;

(9)    Evidence obtained since Petitioner's Motion for New Trial proceedings establishes that the state withheld significant amounts of favorable evidence, before, during, and after trial;

(10) Petitioner was sentenced based on an unconstitutional statute in which the lesser included offense potentially receives a greater punishment;

(11) Agents of the state engaged in direct obstruction efforts to challenge Petitioner's conviction;

(12) Petitioner was convicted using evidence gained through illegal searches and seizures on 2/8/99 and 2/22/99 in that the warrant was improperly obtained: no probable cause existed for issuance of the warrants, the warrant was based on hearsay from sources which were not recently associated with the Petitioner's ventures, the warrant was not sufficiently specific, and despite the massive seizure of electronic files, no inventory was provided;

(13)  Jurisdiction and venue in Chatham County were improper as to counts 1, 2, 4, 5, 7, and 9;

(14)   Petitioner was denied due process of law by the trial court's erroneous evidentiary rulings; and

(15) Petitioner was denied his right to thoroughly cross-examine witnesses.

Doc. 1.

3

Petitioner unsuccessfully sought the appointment of counsel multiple times in this case. Docs. 3, 70, 79, 101, 109. In his July 21, 2023, Motion to Appoint Counsel, doc. 109, Petitioner indicated that the Georgia Supreme Court had reexamined its cumulative error rule and had invalidated the Georgia Court of Appeals' holding on Petitioner's direct appeal. Doc. 109 at 4. Specifically, in *State v. Lane*, the Georgia Supreme Court held that "the proper approach [to ineffective assistance of counsel claims] is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." 838 S.E.2d 808, 815 (Ga. 2020). In reaching that conclusion, the Georgia Supreme Court reversed a "rule . . . employed by Georgia appellate courts for more than 40 years," and "overrule[d] [its] prior decisions and those of the Court of Appeals that hold that the prejudicial effect of multiple trial court errors may not be considered cumulatively . . . , and disapprove[d] any decisions with language to that effect . . . ." *Id.* Among the decisions reversed by *Lane* was Petitioner's direct appeal, *Schwindler v. State*, 563 S.E. 2d 154 (Ga. Ct. App. 2002). *Id.* at 820. Based on that new complexity, the Court appointed attorney Samuel Mikell to represent Petitioner. Doc. 112 at 3-4.

4

Mikell filed a brief on Petitioner's behalf making arguments not only regarding the impacts of *Lane* on Petitioner's habeas case, but also arguing that the Georgia Supreme Court, in *George v. State*, 865 S.E.2d 127 (Ga. 2021), invalidated the Georgia Court of Appeals' affirmance of Petitioner's conviction on other grounds as well. *See* Doc. 122. The brief explained that law enforcement "went into a Styrofoam cooler under Mr. Schwindler's bed," which was not listed in the warrant, and seized letters stored therein between Mr. Schwindler and another adult male which were sexual in nature, also not listed in the warrant, and used that evidence to show Petitioner's "lustful disposition" in violation of the Fourth Amendment. Doc. 122 at 7-8. Mikell's brief associated the *Lane* cumulative error argument with Ground Two and the *George* Fourth Amendment argument with Ground Twelve. *See id.* at 3, 7. Mikell also made arguments on Petitioner's behalf in support of Grounds Seven, Eleven and Nine, but stated Petitioner did not "concede, abandon, or waive any other counts." *Id.* at 3.

The Magistrate Judge found that Petitioner's Ground One, parts of Ground Two, Ground Four, Ground Eight, Ground Thirteen, and Ground Fourteen were decided on the merits by either the Georgia Court of

Appeals or the state habeas court and thus afforded deference to those decisions pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* Doc. 126 at 25-26 (citing *Williams v. Alabama*, 791 F.3d 1267, 1272 (11th Cir. 2015); *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)). The Magistrate Judge also found the state habeas court's procedural default holdings on Grounds Three, Five, Seven, Eight (to an extent), Nine, Ten, and Fifteen were independent and adequate, and thus precluded any subsequent federal habeas review of those Grounds. *Id.* at 26 (citing *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990)). The Magistrate Judge found that parts of Ground Two, Ground Six, Ground Eleven, and Ground Twelve were not properly before the Court, lacked merit, and were factually and legally unsupported. *Id.*

As to the two grounds based on Georgia Supreme Court cases overruling aspects of Petitioner's denied direct appeal, the Magistrate Judge recommended denying relief. On the ineffective assistance claim, the Magistrate Judge found that Petitioner had not met his burden to show that the Georgia Court of Appeals' decision was contrary to federal law or that it involved an unreasonable application of such law. Doc. 126

at 46-47. Furthermore, the Magistrate Judge pointed out that the Georgia Court of Appeals had rested its denial of the ineffective assistance claim on the deficient performance prong of *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). However, the later Georgia Supreme Court decision, *State v. Lane*, 838 S.E. 2d at 815, addressed only the prejudice prong. Doc. 126 at 48-49. The Magistrate Judge found that Petitioner's Fourth Amendment claims regarding the discovery of evidence located in a Styrofoam cooler were not contained in his unamended Petition for relief, and that his attempt to make a belated argument as to the merits of a Fourth Amendment claim based on the facts asserted in the Petition was improper. *Id.* at 90-96.

## DISCUSSION

### I.    Petitioner Cannot Amend his Petition via Objection or Briefs

Petitioner's Objection asserts bases for relief which were not alleged in his Petition. First, in his Objection, Petitioner attempts to add a claim that trial counsel was ineffective for failing to challenge the legality of searches and seizures leading to the seizure of evidence admitted against

7

Petitioner at trial.[1]  *See* Doc. 129 at 14.  Second, Petitioner argues that even though he failed to plead a Fourth Amendment claim that the execution of the warrant leading to the discovery of evidence (whose use at trial was later reversed in *George*) was unconstitutional, the Court should review the claim and excuse the failure to plead it given Petitioner's *pro se* status at the time he filed his Petition.  *Id.* at 18. Because of Petitioner's repeated attempts to expand his Grounds for relief beyond what he asserted in his Petition, the Court must first consider whether such a "constructive" amendment of his Petition is allowable.

Both AEDPA and the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Corpus Rules") provide "that different grounds for relief are treated as different claims," *Samples v. Ballard*, 860 F.3d 266, 274 (4th Cir. 2017), and that petitioners must "state the facts supporting each ground," *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Habeas Corpus R. 2(c)).  Unlike most federal civil

---

[1] Petitioner also asserts that the Magistrate Judge's conclusion that *Stone v. Powell*, 428 U.S. 465 (1976), bars Petitioner's Fourth Amendment claim is wrong since Petitioner argues deficient representation as to that Fourth Amendment issue.  *See* Doc. 129 at 17 (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)).  But he does not assert that claim in his Petition.  *See generally* Doc. 1.

proceedings, which require that a complaint provide only "fair notice of what the plaintiff's claim is and the grounds upon which it rests," "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 655 (citation omitted). That rule requires petitions to "'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Id.* (quoting Habeas Corpus R. 2(c)); *see also* Habeas Corpus R. 4 advisory committee's note ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (citation and internal quotation marks omitted)).

As the Supreme Court has noted, "[i]n the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important." *Mayle*, 545 U.S. at 655 (quoting Habeas Corpus R. 2(c) advisory committee's note). For that reason, "the model form available to aid prisoners in filing their habeas petitions" cautions that the petition must contain *all* grounds for relief being challenged and "state the facts that support each ground." *Id.* In addition, it warns that failure to state all grounds may bar the petitioner "from presenting additional grounds at a later date." *Id.*; *see also* Doc. 1 at 11 ("Also, if you fail to set forth all

the grounds in this petition, you may be barred from presenting additional grounds at a later date.")

Though the Eleventh Circuit has not directly addressed the issue, other courts of appeals have expressly recognized the district court's duty to consider only the specific claims raised in a § 2254 petition. *Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) ("[O]nce the petitioner has identified specific conduct in his petition, he is constrained to rely only on that conduct." (citing *Ellis v. Raemisch*, 872 F.3d 1064, 1090–94 (10th Cir. 2017) (reversing a district court's judgment granting § 2254 relief when the attorney conduct serving as the basis for an IAC claim was raised *sua sponte* and differed from the conduct that formed the basis for the originally presented and exhausted claim))); *Bracken v. Dormire*, 247 F.3d 699, 702 (8th Cir. 2001) ("Earlier cases have made clear that 'we will not consider issues or grounds for relief that were not alleged in a prisoner's habeas petition.'" (quoting *Frey v. Schuetzle*, 78 F.3d 359, 360 (8th Cir. 1996))). This Court is guided by these rules. *See, e.g., Myricks v. Smith*, No. 1:20-cv-4403, 2024 WL 6084017, at *1 (N.D. Ga. June 28, 2024) ("Petitioner cannot claim in his petition that counsel was ineffective for failing to object to certain evidence and then expect the

10

Court to determine that counsel was ineffective for an entirely different reason.")

Moreover, Congress enacted AEDPA to "impose[ ] important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases" due to its "respect[ ] [for] the authority and ability of state courts and their dedication to the protection of constitutional rights." *Shoop v. Hill*, 586 U.S. 45, 49 (2019) (per curiam). These limitations include the aforementioned rules, as well as a strict statute of limitations and an invariable dedication to the requirement that any proposed amendment "relate back" if it is made outside of the limited period. Specifically, Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). This rule is strictly applied in habeas cases. *See, e.g., Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000).

To relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a

11

separate occurrence in "both time and type." *Davenport*, 217 F.3d at 1344. In *Davenport, pro se* claims brought belatedly did not relate back when they asserted different theories of ineffective assistance of counsel than those asserted in the original petition, even though ineffective assistance was one of the grounds for relief asserted. *Id.* ("The original claims thus dealt with the chemical makeup of certain drugs, whereas the amended claims addressed the relationship between the drug transactions and his counsel's having improperly relied on a one-page lab summary instead of obtaining the full eleven-page lab report."); *see also Mayle*, 545 U.S. at 661 ("Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an 'occurrence.'").

Here, Petitioner's added claims are in contravention of Habeas Corpus Rule 2(c), but, more importantly, they do not relate back. Thus, even if Petitioner had properly sought amendment to repair the procedural error, by the time he began to make the arguments, he was out of time. His claim that counsel was ineffective for failing to challenge the legality of searches and seizures leading to the seizure of evidence admitted against Petitioner at trial is, therefore, **DISMISSED** since it has been argued for the first time in his Objection. Petitioner associates

12

his other belatedly added claims with specific grounds for relief, and they are addressed *infra*.

## II. The Court Adopts the Portions of the Report and Recommendation to which Petitioner has not Objected

Though he argues he does not concede, abandon, or waive his other grounds, Petitioner's Objection to the Magistrate Judge's Report and Recommendation addresses only Grounds 2, 7, 11, and 12. *See generally* Doc. 129. Where a litigant fails to offer specific objections to a magistrate judge's factual findings, there is no requirement of *de novo* review. *Garvey v. Vaughn*, 993 F.2d 776, 779 & n.9 (11th Cir. 1993). A specific objection must "identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989). The Court must, however, review legal conclusions *de novo*, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

Petitioner's Objection does not identify any error, either factual or legal, in the Magistrate Judge's recommendations for dismissal of Grounds 1, 3, 4, 5, 6, 8, 9, 10, 13, 14, or 15. *Compare* Doc. 126 *with* Doc. 129. Additionally, the Court has conducted the requisite *de novo* review

of the Report and Recommendation's legal conclusions on those Grounds and finds no error. Therefore, the Report and Recommendation as to those Grounds is **ADOPTED**. Doc. 126, in part. Grounds 1, 3, 4, 5, 6, 8, 9, 10, 13, 14, and 15 of the Petition are **DISMISSED**. Doc. 1, in part.

## III.   The Petitioner's Objections are Overruled

Petitioner objects to the recommendation of dismissal of Grounds 2, 7, 11, and 12. Doc. 129. The Court addresses each objection in turn.

### A. Ground Two: Ineffective Assistance of Counsel

Petitioner alleges in Ground Two that he was denied effective assistance of trial counsel. Respondent, and then the Magistrate Judge, separated Petitioner's factual allegations into separate subclaims as follows:

(i)   [Trial counsel] refused to investigate case and perjured self when testified he'd interviewed witnesses;

(ii)   Pat McGuire, Erick Williams, Debbie Williams, Captains Walbridge & Schwisow, Josh Brantley, Amy Perry all offered sworn statements that [trial counsel] refused to talk with them;

(iii)   No potential witness could be found [trial counsel] had interviewed;

(iv)   [Trial counsel] did not know law about challenging Alabama search or prior convictions;

14

(v)     [Trial counsel] insisted Petitioner had to testify, but refused to prepare Petitioner for trial;

(vi)    [Trial counsel] had a real conflict of interest involving Robbie Garvin that led to disruption of Petitioner's legal files prior to motion for new trial by the D.A.'s office;

(vii)   [Trial counsel] had virtually every fact about the case and Petitioner's background wrong; and

(viii)  [Trial counsel] could not properly or effectively examine any of the witnesses because he refused to believe anything Petitioner said and would not speak to anyone he referred him to.

Doc. 126 at 36-37. Petitioner did not object to the Magistrate Judge's characterization of the supporting facts as subclaims. *See generally* Doc. 129.

The Magistrate Judge found that Petitioner did not exhaust Subclaims (ii), (iii), (iv), (v), and (vii). Doc. 126 at 40. Further, as noted above, the Magistrate Judge found that, as to Petitioner's remaining claims, deference was owed to the Georgia Court of Appeals' decision, because Petitioner had not shown the Georgia Court of Appeals' decision was contrary to or involved an unreasonable application of clearly established law, despite the Georgia Supreme Court's later holding in *Lane*. *See id.* at 46-49. As well, the Magistrate Judge found that the Georgia Supreme Court's decision in *Lane* eroded only its analysis of the

prejudice prong of *Strickland*; Petitioner's ineffective assistance averments were denied partly on the deficient performance prong of *Strickland* in his direct appeal, and thus the overall denial of relief was not in error. *Id.* at 48-49. The Magistrate Judge also noted that, even if the Georgia Court of Appeals' decision was contrary to or involved an unreasonable application of clearly established law, and thus deference was not owed, Petitioner had not shown constitutionally ineffective assistance of counsel on his exhausted claims. *Id.* at 49-51. Finally, the Magistrate Judge found that Petitioner's independent cumulative error claim—that there were errors which, when considered cumulatively, mandated relief—failed as well. *Id.* at 51-52.

Petitioner's Objection primarily takes issue with the Magistrate Judge's finding that the Georgia Court of Appeals' decision was not contrary to or an unreasonable application of federal law. *See, e.g.*, Doc. 129 at 11.[2]    Petitioner complains about the Magistrate Judge's characterization of his claim; the Magistrate Judge noted that "Petitioner has argued that, since the Georgia Court of Appeals did not apply

---

[2] Petitioner does not contest the exhaustion finding and thus the Court adopts the Magistrate Judge's recommendation that Subclaims (ii), (iii), (iv), (v) and (vii) be dismissed.

*Strickland* **in the manner now considered proper by the Georgia Supreme Court**, the Court's deference is inappropriate." Doc. 129 at 10 (citing Doc. 126 at 46 (emphasis added by the Petitioner)). Using quotes from *Lane*, Petitioner argues that the U.S. Supreme Court in Strickland "told all lower courts 'explicitly that we must consider prejudice collectively in the context of ineffective assistance of counsel . . . .'" *Id.* (citing Doc. 122 at 5 (quoting *Lane*, 838 S.E.2d at 814 (citing *Strickland*, 466 U.S. at 687))). Thus, Petitioner complains that it is not the Georgia Supreme Court's opinion he seeks to apply, but the United States Supreme Court's. Yet nowhere in Petitioner's Objection does he cite to *Strickland* directly for the proposition that the United States Supreme Court "told all lower courts" to consider prejudice collectively in the context of ineffective assistance claims. He cites only *Lane*'s conclusion that *Strickland* has directed so. Therefore, the Magistrate Judge's characterization of the claim is not erroneous, even though Petitioner disagrees with the Magistrate Judge's paraphrase.

In any event, the Court finds most compelling the Magistrate Judge's recommendation that the Georgia Court of Appeals' decision regarding the deficient performance prong of *Strickland* was unaltered

17

by *Lane*. Of the unexhausted subclaims which constitute instances of alleged deficient performance, Petitioner alleges: Trial counsel refused to investigate his case and perjured himself when he testified he had interviewed witnesses; trial counsel insisted Petitioner had to testify, but refused to prepare Petitioner for trial; trial counsel had a conflict of interest involving another individual, Robbie Garvin, that led to disruption of Petitioner's legal files prior to filing a motion for new trial by the D.A.'s office; and trial counsel could not properly or effectively examine any of the witnesses because he refused to believe anything Petitioner said and would not speak to anyone he referred him to. Doc. 126 at 36-37, 40.

The Georgia Court of Appeals found the enumerated instances of deficient performance were "strategic and tactical decisions that . . . are virtually unchallengeable and do not require a finding of ineffective assistance of counsel." *Schwindler*, 563 S.E.2d at 165 (internal citations omitted). The Magistrate Judge reviewed the facts in the record, such as trial counsel's testimony, and found that for every complaint, there was a convincing explanation. *See* Doc. 126 at 43-46. Thus, the Magistrate

18

Judge found that Petitioner had not shown the Georgia Court of Appeals' decision constituted an unreasonable interpretation of the facts. *Id.*

Next, the Magistrate Judge reviewed the application of law. He noted that "no absolute duty exists to investigate particular facts or a certain line of defense." Doc. 126 at 49-50 (citing *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000)). The Magistrate Judge also acknowledged that, "[u]nder *Strickland*, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." *Id.* (citing *Chandler*, 218 F.3d at 1317; *Strickland*, 466 U.S. at 690 (Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.")). Accordingly, the Magistrate Judge found that the Georgia Court of Appeals' decision was not contrary to and did not involve an unreasonable application of *Strickland*'s deficient performance prong.

Petitioner asserts two arguments for why the Georgia Court of Appeals' decision on the deficient performance prong was improper. First, Petitioner takes issue with trial counsel calling him a "goddamned liar" in open court. Doc. 129 at 13. As a quick review, during trial, but

outside the presence of the jury, Petitioner accused trial counsel of disclosing attorney-client communications to a third party. *See* Doc. 122-3 at 137-40. Trial counsel resorted to name-calling in response. *Id.* Second, as explained above, Petitioner argues that trial counsel failed to effectively challenge the legality of searches and seizures leading to the seizure of evidence against him. Doc. 129 at 14. Notably, neither of these averments are included in the Petition as subclaims or as factual allegations supporting specifically the ineffective assistance claim asserted in Ground Two. *See* Doc. 1. Petitioner's counsel's attempt to salvage Ground Two by expanding its factual premise via briefing is commendable, but improper, as explained *supra*.

On his first argument, Petitioner elaborates that the Georgia Court of Appeals' analysis was "contrary to clearly established federal law because it assumes incorrectly that all of trial counsel's deficiencies enumerated by Mr. Schwindler were 'trial tactics.'" Doc. 129 at 13. As an example, he notes the name-calling incident and argues that it demonstrates neglect. *Id.* While the incident certainly indicates tension between counsel and client, it does not show neglect. As to the tension between counsel and client, the Georgia Court of Appeals correctly noted

20

that, according to the record, after their courtroom altercation, "Schwindler changed his mind and announced that his difficulties with counsel had been resolved and that he wanted counsel to continue to represent him." *Schwindler*, 563 S.E.2d at 164. Thus, the tension was clearly addressed. Petitioner otherwise fails to contradict the Georgia Court of Appeals' factual finding that "ample evidence" supported trial counsel's tactical decisions with evidence to the contrary. *Schwindler*, 563 S.E.2d at 165. Accordingly, this argument fails.

Petitioner's second argument, that trial counsel's tactics were deficient in that he failed to effectively challenge the legality of searches and seizures leading to the seizure of evidence admitted against Petitioner at trial, fails for the reasons explained *supra*. Doc. 129 at 14. As noted, this is the first time Petitioner has asserted that trial counsel was ineffective for failing to "effectively challenge the legality of searches and seizures" in these federal proceedings. *But see* Doc. 122-2 at 34-35. Petitioner may not add this claim at this stage. The two claims do not share a common core of facts simply because both assert that a particular right was violated at trial. *See Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003); *Espinosa v. United States*, 330 F. App'x 889, 892

(11th Cir. 2009) (Ineffective assistance claims that prior conviction was invalid, which were raised in supplemental memorandum, did not relate back to original § 2255 motion which alleged failure to advise on sentencing exposure.); *Dodd v. United States*, 614 F.3d 512, 516 (8th Cir. 2010) (collecting cases holding that an ineffective-assistance claim cannot relate back to an ineffective-assistance claim based on a different set of facts).

Petitioner's Objection to the Magistrate Judge's Recommendation that Ground Two be denied is **OVERRULED**.  "[A] federal court may grant relief only if *every* 'fairminded jurist' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739-40 (2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  Petitioner has not met this burden or shown that the Georgia Court of Appeals' decision on the deficient performance prong of *Strickland* was contrary to or an unreasonable application of *Strickland*.  Because a Petitioner must prevail on both prongs of *Strickland*, his claim would fail even if his arguments regarding the prejudice prong and *Lane's* impact were meritorious.  Ground Two is therefore **DISMISSED**.

## B. Ground Twelve: Fourth Amendment Claims

Petitioner's Ground Twelve asserts that his convictions were "obtained using evidence gained through illegal searches and seizures on February 8, 1999, and February 22, 1999." Doc. 1 at 31. In the subsection titled "supporting facts," Petitioner claimed that "[n]o probable cause existed for issuance of the warrants." *Id.* He argues:

> The state knew that Timothy Brantley would not be at the residence due to its ongoing aerial reconnaissance of the ship and island in South Carolina, and its counter-narcotics surveillance of the 37 Montomery [sic] Street and 244 Kensington Drive (Brantley residence) in Savannah.

*Id.* He then argues:

> The warrant was based upon hearsay, which was both 2, 3, and 4 times removed as well as excessively stale.

*Id.* Petitioner then provides five explanations supporting his argument that the warrant was either based on hearsay or was excessively stale. *See id.* at 31-32. He claims the warrants themselves were not sufficiently specific, and that no specific inventory was ever produced. *Id.* at 32. Petitioner never alleged facts challenging the execution of the warrant. *Id.* at 31-32.

Petitioner's counsel argued in supplemental briefing that his Fourth Amendment rights were violated when evidence was obtained

from the Styrofoam cooler during the execution of the warrant and then used against him at trial. Doc. 122 at 7-8. This claim was argued before the Georgia Court of Appeals, whose decision denying relief on the claim was reversed by the Georgia Supreme Court in *George*, 865 S.E.2d at 131. This claim, however, was not asserted in Petitioner's § 2254 Petition. *See generally* Doc. 1. The Magistrate Judge found that Petitioner's belated inclusion of the claim in supplemental briefing, without having amended his Petition, constituted an "improper attempt to broaden his grounds beyond that which was pleaded." Doc. 126 at 93. As to the claim which was pleaded in the Petition, alleging that the warrant was illegally obtained or in some manner deficient, the Magistrate Judge found it was barred by *Stone v. Powell*, 428 U.S. 465 (1976). *See* Doc. 126 at 91-94.

Petitioner's Objection argues that the Magistrate Judge erred in his analysis of *Stone*. Petitioner claims that *Stone* does not apply, because "the [U.S. Supreme] Court held that the *Stone* restriction on federal habeas review of Fourth Amendment claims did not apply to ineffective assistance of counsel claims based on deficient representation with respect to a Fourth Amendment issue." Doc. 129 at 17 (citing *Johnson v. Nagle*, 58 F. Supp. 2d 1303, 1374-75 (N.D. Ala.); *Kimmelman v. Morrison*,

24

477 U.S. 365, (1986)). Petitioner asserts that "this case presents just that—an ineffective assistance of counsel claim based on deficient representation with respect to a Fourth Amendment issue." *Id.* Petitioner then repeats his direct appeal argument, which was that trial counsel had "failed to effectively challenge the legality of the searches and seizures which led to the seizure of evidence later admitted against [Petitioner] at trial." Doc. 129 at 17-18 (citing Doc. 122-2 at 34). Petitioner claims, "given trial counsel's ineffectiveness in preserving [Petitioner's] Fourth Amendment rights, [Petitioner] has an ineffective assistance claim[ ] based on deficient representation with respect to a Fourth Amendment issue." *Id.* at 18.

As explained supra, Petitioner has not, in fact, asserted an ineffective assistance claim relevant to the Fourth Amendment claim in this Court. Petitioner asserted that claim in the Georgia Court of Appeals, but it was not successful. Though its failure was reversed in part, the Georgia Court of Appeals' holding that Petitioner had failed to show constitutionally deficient performance remains in place. Without an ineffective assistance claim to rely upon, *Stone* is applicable. Thus, Petitioner's reliance on *Kimmelman* and its progeny to escape *Stone's*

applicability is meritless. Petitioner's objections regarding his pleaded Fourth Amendment claims, which focused on obtaining the warrant that led to the seizure of evidence used against him at trial, are **OVERRULED**.

Next, Petitioner's claims regarding the execution of the warrant must be addressed, even though they were not pleaded in the Petition. The Magistrate Judge found that Petitioner could not "constructively amend his Petition at this late hour to include claims not alleged originally unless they relate back." Doc. 126 at 95. Petitioner objects to this recommendation, arguing that Petitioner's failure to mention the "plain view" theory by name in his Petition should not bar him from pleading it now, given his *pro se* status.

Petitioner relies on *Smith v. Jarriel*, 429 F. App'x 936 (11th Cir. 2011), arguing that in *Smith*, the Eleventh Circuit reversed a district court's denial of a § 2254 petition because "the Magistrate Judge failed to afford Smith's *pro se* petition the liberal construction to which it is entitled." Doc. 129 at 18. In *Smith*, the Magistrate Judge concluded that Smith failed to plead a constitutional violation in his petition since his original claim asserted that the "[t]rial court abused its discretion by

26

admitting Two photographs[ ] . . . that were highly prejudicial." *Smith*, 429 F. App'x at 937 (alterations in original). The Magistrate Judge interpreted this claim as an evidentiary error argument which had no constitutional implications. *Id.* Sometime after filing his original petition, Smith "supplemented his Petition," explaining in his "Brief in Support of Petition pursuant to 28 U.S.C. § 2254 that the prejudice from the photographs 'violated due process.'" *Id.* Smith's objections to the Magistrate Judge's report and recommendation also argued that the Magistrate Judge erred by not concluding that the challenged photographs prejudiced his right to a fair trial in violation of the Fourteenth Amendment. *Id.* But the Magistrate Judge continued to construe the claim only as an evidentiary error argument which was not a cognizable constitutional claim and never acknowledged Smith's attempt to make a due process claim. *Id.*

The Magistrate Judge's error in *Smith*, according to the Eleventh Circuit, was not in denying the claim, but was, instead, in not recognizing and addressing the constitutional claim associated with the facts asserted, as required by *Clisby v. Jones*, 960 F.2d 925 (1992) (holding that a district court must resolve all claims for relief raised in petition for writ

27

of habeas corpus, *i.e.*, any allegation of a constitutional violation). *See Smith*, 429 F. App'x at 937 n.1 ("[B]y describing the Report and Recommendation as '[finding Ground 7] to be [an] inapplicable ground[ ] for federal habeas relief,' the District Court appears to have reached the same conclusion that Ground 7 did not present a claim for relief premised upon the Constitution."). *Smith* has since been quoted for the proposition that "a federal court reviewing a state prisoner's habeas petition may not 'reexamine state-court determinations on state-law questions,' but it may review state evidentiary rulings to determine whether the rulings violated the petitioner's due process rights." *See, e.g., Broadnax v. Dunn*, No. 2:13-CV-1142-AKK, 2019 WL 6829995, at *19 (N.D. Ala. Dec. 13, 2019) (citing *Smith*, 429 F. App'x. at 937).

*Smith* is not analogous to the proceedings in this case. First, Petitioner was granted an opportunity to amend his Petition, but he chose not to do so. Doc. 75 at 4. It was only when Petitioner saw a new avenue for relief, late in the proceedings, that he attempted to add another theory of Fourth Amendment relief. Second, the Magistrate Judge's discussion does not mistakenly overlook facts supporting a poorly articulated constitutional claim for relief. Nor did the Magistrate Judge

28

continue to misconstrue a claim which was later clarified in supplemental briefing as being one with constitutional implications which had not been obvious before. *Contrast Smith*, 429 F. App'x 936; *Beaver v. Welch*, 161 F. App'x 892 (11th Cir. 2006) (where *pro se* Petitioner filed "petition for amended habeas corpus" and continued to argue originally pleaded claims, the district court erred in failing to liberally construe Beaver's motion as a motion to supplement his petition and to consider original and supplemented claims). Here, Petitioner did not plead facts in any way relevant to the Styrofoam cooler, the execution of the warrant, or any other allegation relevant to the theory he now seeks to advance eight years after he first filed his Petition. His *pro se* status notwithstanding, Petitioner clearly articulated his challenges to his conviction, but he did not contest the execution of the warrant in Ground Twelve.

As well, the Court does not punish Petitioner merely for failing to reference the "plain view" theory by name, as he suggests. *See* Doc. 129 at 19. Rather, Petitioner's failure to plead facts, or to provide Respondent with any notice of the theory for relief, in contravention of Habeas Corpus Rule 2(c), is impermissible. And, as the Magistrate Judge noted, because

this is a clear attempt to amend Petitioner's allegations, and not a mere clarification or even an additional theory based on already pleaded facts, Petitioner may not add the claim unless the allegations relate back. *See* Doc. 126 at 95-96. In this case, they do not; just as in *Davenport*, new theories of constitutional violations must relate back in order to be considered, even if the added claim is premised on the same constitutional amendment as a claim asserted in the original petition. *See Davenport*, 217 F.3d at 1346; *see also Casey v. Sec'y, Dep't of Corr.*, No. 2:16-cv-821, 2022 WL 819976, at *7 (M.D. Fla. Mar. 18, 2022) (even considering petitioner's "fantastical allegations," tenuous connection between *pro se* claims of fraud and trickery by state actors and counsel's supplemental claims of petitioner's mental incompetence during his plea proceedings was not tied to a "common core of operative facts" such that they related back to claims raised in the timely *pro se* petitions"). Petitioner's objection to the Magistrate Judge's rejection of his newly-raised claim regarding the execution of the warrant is **OVERRULED**. Petitioner's Ground Twelve is **DISMISSED**.

> ### C. Ground Seven: Wallpapering of Elicit Photos Violated Due Process

Petitioner next objects to the Magistrate Judge's recommendation that Ground Seven be dismissed. Doc. 129 at 20-23. Petitioner alleged in his Petition that the "introduction of eight sexually explicit photos before any testimony or arguments violated [his] due process rights." Doc. 1 at 21. The Magistrate Judge relied on the state habeas court's finding that the claim was procedurally defaulted. Doc. 126 at 70-74. Petitioner objects, arguing the claim was not procedurally defaulted since he objected at trial and on appeal. Doc. 129 at 21.

Indeed, even though Petitioner objected to the photos at trial and on appeal, the state habeas court ruled this claim was procedurally defaulted. At trial, Petitioner objected to the photos based on an argument that they had not been authenticated. *See* Doc. 129 at 22 (noting that trial counsel objected to the photos, arguing "they have not at this point been authenticated," and "we would respectfully ask it not be shown to the jury until they are authenticated." (citing Doc. 122-4 at 151)). On appeal, Petitioner argued that the photos should not have been admitted as similar transaction evidence given the prejudice to the jury. *See id.* (stating that, on appeal, appellate counsel argued "[t]he use of the Alabama photos depicting Schwindler's conduct with his nephews,

including their use in opening statement, so prejudiced the jury that Schwindler could never have received a fair trial under any circumstances").

In his federal petition and to the state habeas court, Petitioner argued that the *timing* of the presentation created a due process violation. *See* Doc. 1 at 21 ("Introduction of eight sexually explicit photos before any testimony or arguments violated Schwindler's due process rights."); *see also* Doc. 40 at 46 ("In ground 6 Petitioner contends that the introduction of 'sexually explicit' photos before any testimony violated due process."). Petitioner did not argue that the similar transaction evidence should not have been admitted due to jury prejudice in either his federal Petition or his state habeas petition.

The difference in the claim becomes apparent in reviewing the Petition's allegations regarding exhaustion and the procedural history of the claim. Doc. 1 at 22. In response to the requirement that Petitioner explain why he did not exhaust state remedies, Petitioner argues that "[n]either [of his appellate counsel] were familiar with *Gilstrap v. State*, 261 Ga. 798 (1991), so their arguments ignored the basic due process issue." *Id.* Petitioner complains that his appellate counsel altered the

brief he drafted to change the citation to reference *Gilstrap v. State*, 215 Ga. App. 180 (1994), "an entirely difference case" "which deals with similar transaction evidence in general–not the age or timing of introduction." *Id.* Petitioner then admits that the issue was "partially exhausted," though he thought it would be exhausted at the state habeas court. *Id.* However, as noted, the state habeas court found it procedurally defaulted since it was a different claim than the one asserted on appeal. Clearly, the state habeas court took its cues from Petitioner's explicit claims, wherein he sought to distinguish the allegations brought on direct appeal from the ones he sought to bring at state habeas, just as he has done here, by virtue of criticizing his appellate counsel. Doc. 23 at 26 (alleging in Ground Six of his renewed state habeas petition that the "introduction of the sexually explicit photos before any testimony or arguments violated Schwindler's due process rights"); *see also id.* at 30 (arguing that Ground Six was not raised previously due to ineffective assistance of counsel). Indeed, in his Application for Certificate of Probable Cause to Appeal, Petitioner argued that appellate counsel's altering the citation from one *Gilstrap* case to the

33

other was an example of appellate counsel's ineffectiveness.  Doc. 40 at 93-94.

The next section of the Petition is even more harmful to Petitioner's argument.  Petitioner admits that "[t]his issue was raised tangentially by [appellate counsel], and in [his] pro se motion for reconsideration, but due to the imposition of [counsel's] appellate brief, the issue was considered only in the form he raised it."  Doc. 1 at 22.  Petitioner thus admits the claim brought on direct appeal is different from the one asserted at state habeas, and in his Petition here, but Petitioner claims the discrepancy is not his fault; the ineffectiveness of appellate counsel was to blame.  However, Petitioner's ineffective assistance claims fail and thus they cannot serve as cause to excuse procedural default.

The Magistrate Judge found the state habeas court properly concluded that the claim before it–one disputing the timing of the presentation of the photos–was procedurally defaulted.  Doc. 126 at 73-74.  Petitioner's counsel has tried to find the through line to connect the defaulted claims with the timely argued claims, but Petitioner has been explicit about the violation he wishes to pursue.  It is not the one counsel asserts.

The Court agrees that the state habeas court's holding that the claim was procedurally defaulted was correct. And a state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim. *Judd*, 250 F.3d at 1313 (citing *Harmon*, 894 F.2d at 1270). "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Williams*, 791 F.3d at 1273 (quotation marks omitted) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). Petitioner has not argued the state court's decision rests on a inadequate ground or a ground dependent on federal law. Therefore, his objection to the Magistrate Judge's Recommendation on Ground Seven is **OVERRULED**. Ground Seven is **DISMISSED**.

### D. Ground Eleven: Petitioner's Transcript & State Obstruction

In his Petition, Petitioner alleges that "agents of the state have engaged in direct obstruction of efforts to challenge conviction." Doc. 1 at 28. He further claims that his legal materials have been repeatedly disrupted by the prison's removal of staples, shuffling papers and files,

and similar actions. *Id.* He asserts that the district attorney sent an investigator named "Edenfield," based on his trial counsel's belief that Petitioner was interfering with trial counsel's other client, Robbie Garvin. *Id.* Petitioner then outlines several more claims against the state's attempts to "force disposal" of his materials since he was imprisoned. *Id.* at 28-29. Petitioner's supplemental brief, submitted through counsel, argues that, because Petitioner has not been afforded his full transcript, he has not been afforded due process. Doc. 122 at 13-14.

The Magistrate Judge found that, except for his argument regarding the appellate record being incomplete, Petitioner's claim was fully argued in a separate federal case, which Petitioner dismissed with prejudice. Doc. 126 at 83 (citing *Schwindler v. Dozier*, No. 1:11-CV-1276-TCB, docs. 1, 184 (N.D. Ga. April 19, 2011)). As to any remaining, un-litigated claim that Petitioner did not receive his transcript, the Magistrate Judge found that, since Petitioner does not seek to challenge the "lawfulness of confinement or [the] particulars affecting its duration," his claim is not a habeas claim. *Id.* at 86. The Magistrate Judge found

that those remaining claims would more appropriately be suited to a § 1983 claim.

Petitioner never responds to the Magistrate Judge's finding that he already litigated these claims in the Northern District of Georgia. Instead, Petitioner argues that Ground Eleven "falls solely within the province of habeas corpus under § 2254" because Petitioner titled this Ground "Agents of the State Have Engaged in Direct Obstruction of Efforts to *Challenge Conviction*." Doc. 129 at 24 (emphasis added). However, the action being challenged in the title is the "direct obstruction of efforts," not the conviction itself. Relief on this challenge would not result in Petitioner's release but would either be some injunctive relief or compensatory damages. Even if the Ground does not concern the conditions of his confinement, it is not a habeas claim. Thus, it must be dismissed. Petitioner's Objection on this Ground is **OVERRULED**. Ground Eleven is **DISMISSED**.

### E. Certificate of Appealability is Denied

Petitioner next objects to the Magistrate Judge's recommendation that a Certificate of Appealability (COA) be denied. Petitioner claims that, since the "Georgia Supreme Court has already overruled twice the

37

affirmance of Mr. Schwindler's convictions," jurists necessarily "could conclude that the issues presented are adequate to deserve encouragement to proceed further." Doc. 129 at 25-26. However, as noted by the Magistrate Judge, the two relevant Georgia Supreme Court opinions do not create doubt as to this Court's opinion. The issue reversed in *Lane* would not result in relief for Petitioner since he failed to meet his burden on the other *Strickland* prong. *George*'s holding is also irrelevant since Petitioner failed to plead a claim in his Petition which was relevant to *George*'s holding. Therefore, adopting the standards set forth in *Brown v. United States*, No. 407cv085, 2009 WL 307872, at *1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA will issue. 28 U.S.C. § 2253(c)(1); *see also Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal is likewise **DENIED**. 28 U.S.C. § 1915(a)(3).

## CONCLUSION

For all the foregoing reasons, and after an independent and de novo review of the entire record, the Court **OVERRULES** Petitioner's Objections and **CONCURS with** and **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court. Doc. 126. Thus, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus. Doc. 1. The Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 26 day of May, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

39